**EFiled: Feb 11 2016 02:43PM EST**
**Transaction ID 58563959**
**Case No. 11575-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

February 11, 2016

Brock E. Czeschin, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Steven L. Caponi, Esquire
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, DE  19801

> Re:  *RED Capital Investment L.P. v. RED Parent LLC*
> C.A. No. 11575-VCN
> Date Submitted: January 15, 2016

Dear Counsel:

Plaintiffs RED Capital Investment L.P. ("RED Capital") and George Polk ("Polk," and together, "Plaintiffs") assert that Defendant RED Parent LLC ("RED Parent" or the "Company") violated their rights to inspect certain Company books and records pursuant to the Amended and Restated Operating Agreement of RED Parent, LLC (the "Operating Agreement") and 6 *Del. C.* § 18-305(a)-(b)

("Section 18-305").[1]  RED Capital is a Delaware limited partnership and a member of RED Parent, a Delaware limited liability company ("LLC").[2]  Polk controls RED Capital through his control of Tulum Management USA LLC ("Tulum"), the general partner of RED Capital.[3]  RED Parent is a Delaware LLC focused on reducing greenhouse gas emissions by harnessing waste energy in industrial facilities.[4]  RED Parent wholly owns two subsidiaries: Recycled Energy Development LLC ("RED"), used to conduct RED Parent's operating and development activities, and RED Investment LLC ("RED Investment"), a holding company for various energy projects.[5]

The Operating Agreement requires that each energy project be compartmentalized in a separate entity owned by RED Investment.[6]  Each project entity owned by RED Investment has separate employment agreements, contractor agreements, and debt contracts in an attempt to ensure that each is "bankruptcy

---

[1] Plaintiffs filed the Verified Complaint on October 5, 2015, and the case was tried on December 21, 2015.  This letter opinion sets out the Court's post-trial findings of fact and conclusions of law.

[2] Def. RED Parent LLC's Post-Trial Opening Br. ("Def.'s Opening Br.") 3-4.

[3] Pls. RED Capital Investment L.P.'s and George Polk's Pretrial Br. 4.

[4] Trial Tr. 6.

[5] Pre-Trial Stipulation and Order ¶¶ 4-5.

[6] JX 40 ("Operating Agmt.") § 3.3(d); Trial Tr. 15-16.

remote."[7]   Accordingly, neither RED Parent nor RED Investment directly retains employees—the Company's corporate-level employees are retained by RED.[8]

The Casten family owns 53% of RED Parent, and Tulum owns, through RED Capital, 39% of RED Parent (including 75% of its preferred interests).[9]  The Company is governed by a board of managers (each a "Manager") comprised of nine Managers, six appointed by the Castens and three appointed by RED Capital.[10]  Polk therefore acts both as a Manager of RED Parent appointed by RED Capital, and as a representative of RED Capital's membership interest in RED Parent.[11]

On September 22, 2015, Polk emailed Myra Karegianes ("Karegianes"), RED's general counsel, a request for three categories of information:

---

[7] Trial Tr. 16.
[8] *Id.* at 17.
[9] JX 44.
[10] Operating Agmt. § 5.1.
[11] Trial Tr. 40.

(1) All available monthly financial reports for each individual entity in the RED family[,]

(2) The bank statements and if not yet available the digital records of financial transactions of each entity in the RED family for the period May 1 through the date the information was supplied[, and]

(3) A list of all intercompany financial payments, showing the date, amount and purpose, made between June 1 and [September 22]. The file we are looking for is similar to the one you sent in June "Cash Activity with RED-Rochester" but covering all the operating asset entities.[12]

Polk's email essentially amounted to a request for the books and records of RED Investment's subsidiaries. Polk's stated purpose for the request was to "understand the current cash financial position at RED, because by our calculations RED may be facing an imminent cash crisis, and as investors as well as as a Manager we are bound by our fiduciary obligations to diligently reassure ourselves that all of the assets are solvent and stable."[13] In response, Karegianes assured Polk that the Company would continue to send him periodic financial reports pursuant to the Operating Agreement,[14] although Polk desired additional information to "test

---

[12] JX 32. RED-Rochester is the "most significant" project owned by RED Investment. Def.'s Opening Br. 5.

[13] JX 32.

[14] JX 33.

management's positions, especially when his own calculations suggest[ed] that management is incorrect."[15]

* * *

The parties dispute whether Polk's September 22 email request was made solely in his capacity as a representative of RED Capital (a member of RED Parent) or whether it was also made in his capacity as a Manager of RED Parent. RED Parent argues the former, which would limit Polk's inspection rights, pursuant to his email request, to those enumerated in Section 10.2(c) of the Operating Agreement ("Section 10.2(c)"), specifically, to the "books of account of the Company."[16] Plaintiffs argue, to the contrary, that Polk requested such information in both his representative and his individual capacities, which would subject to Polk's inspection all Company information encompassed by Section 18-305(a).

---

[15] Pls. RED Capital Investment L.P.'s and George Polk's Post-Trial Reply Br. 11.
[16] Operating Agmt. § 10.2(c).

\* \* \*

1.  Inspection Rights Under the Operating Agreement and Section 18-305

Limited liability company agreements are contracts and must be interpreted as such.[17] Such agreements operate to displace otherwise applicable default provisions in Delaware's Limited Liability Company Act.[18] Section 18-305(a) enumerates certain categories of information subject to member and manager inspection in the absence of any limitations in an applicable LLC agreement.[19] A member's or manager's right to receive such information is contingent on the member or manager stating "a purpose reasonably related to the position."[20]

---

[17] 6 *Del. C.* § 18-1101(b); *Mickman v. Am. Int'l Processing, L.L.C.*, 2009 WL 2244608, at \*2 (Del. Ch. July 28, 2009) ("LLC agreements are creatures of contract, which should be construed like other contracts. The construction of an LLC agreement, therefore, begins with the language of the agreement." (footnote omitted)); *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 WL 205681, at \*3 (Del. Ch. Jan. 29, 2002).

[18] 6 *Del. C.* § 18-305(a); *see Grove v. Brown*, 2013 WL 4041495, at \*5 (Del. Ch. Aug. 8, 2013).

[19] "The rights of a member or manager to obtain information as provided in [Section 18-305] may be restricted in an original limited liability company agreement." 6 *Del. C.* § 18-305(g).

[20] *Id.* § 18-305(b); *DFG Wine Co. v. Eight Estates Wine Hldgs., LLC*, 2011 WL 4056371, at \*4 (Del. Ch. Aug. 31, 2011).

The Operating Agreement purports to limit Company members' statutory right to inspection.[21] Specifically, Section 10.2(c) limits a Company member's right to inspect Company records to "books of account" of the Company.[22] Section 10.2(d) provides, in turn, that Company officers shall prepare and deliver to Managers monthly management reports and an annual audited balance sheet, income statement, and cash flow statement. This latter provision does not, contrary to RED Parent's position,[23] restrict a Manager's access to information; requiring officers to prepare and deliver certain information to Managers does not, without more, limit a Manager's access to additional information.[24]

---

[21] Operating Agmt. § 10.2(c). *See* 6 *Del. C.* § 18-305(g); *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007) (operating agreement limiting investor's access to company records), *aff'd*, 945 A.2d 594 (Del. 2008).

[22] The phrase "'books of account' is a less expansive term than 'books and records.'" *Madison Real Estate Immobilien-Anlagegesellschaft Beschrankt Haftende Kg v. Kanam USA XIX Ltd.*, 2008 WL 1913237, at *12 n.91 (Del. Ch. May 1, 2008); *see also Arbor Place*, 2002 WL 205681, at *3.

[23] Trial Tr. 66-67.

[24] *Madison Ave. Inv. P'rs, LLC v. Am. First Real Estate Inv. P'rs, L.P.*, 806 A.2d 165, 173 (Del. Ch. 2002).

>    2. Polk's Request Was Made in His Representative Capacity on
>       Behalf of RED Capital as a Member and in His Individual Capacity
>       as a Manager

RED Parent contends that Polk's September 22 request to Karegianes was made solely on behalf of RED Capital, arguing that Polk's alleged improper motives and his last-minute email, sent after the pre-trial conference, suggest such an interpretation.[25] Neither argument, however, addresses the language of Polk's September 22 request. Specifically, Polk's email stated that "[he] act[s] at all times as a member of RED, regardless of whether [he is] also acting as a Manager," that he requested the information "[o]n behalf of RED Capital Investment LP," and that, given his calculations suggesting an imminent cash crisis, he is bound by fiduciary obligations "as an investor[] as well as as a manager" to "diligently reassure [himself] that all of the assets are solvent and stable."[26]

RED Parent focuses on the first two statements, contending that such language expressly indicates Polk's intent to request the information solely on

---

[25] Def.'s Opening Br. 16-17.
[26] JX 32.

behalf of RED Capital.[27]   While these two statements in isolation support the

Company's interpretation, when read in conjunction with the third statement and

the purpose for the demand—to ensure the stability of the Company's assets and

cash position—the demand as a whole suggested that Polk made the request in his

capacity as both a representative of RED Capital and an individual Manager.[28]

Therefore, Polk's request is not subject to Section 10.2(c)'s limitation on member

inspection to "books of account."[29]

      3.  <u>Polk is Entitled to the Requested Books and Records</u>

RED Parent argues that Polk is not entitled to project-level data because

each operating subsidiary of RED Investment "is a legally distinct entity created

---

[27] Def. RED Parent LLC's Post-Trial Reply Br. ("Def.'s Reply Br.") 22-23; Def.'s Opening Br. 14.

[28] Although the request began with the language "[o]n behalf of RED Capital Investment," it also implicated Polk's capacity as a Manager when it later stated that the justification for seeking books and records regarding the Company's cash position is to ensure compliance with his duties as a Manager.  JX 32.

[29] The Court notes that simply holding more than one position does not mean that every act taken is done in every capacity held.  While the Court concludes that Polk requested the desired books and records in both his capacity as a representative of RED Capital and as a Manager, the content of his demand letter could support a reasonable inference otherwise.  In general, corporate actors should identify in which capacity they are acting at any given time in order to avoid the uncertainty present in Polk's request.

for a host of legitimate business reasons."[30]  Polk cites *DFG Wine* to support his

contention that records of RED Investment's subsidiaries are subject to his request

for inspection.[31]  There, the Court held that where a subsidiary is the parent's sole

asset and is wholly owned by the parent; the subsidiary's value accrues to the

parent; and the subsidiary has no board of directors, is managed by the parent, has

the same address as the parent, and has no budget or plan apart from the parent's,

the relationship suggests an absence of distinct entities and "it would be unfair,

under the circumstances, to" restrict the member's access to subsidiary

information.[32]  The facts here are similar: RED Parent has no business other than

those of its operating subsidiaries,[33] RED Parent has no employees or daily

---

[30] Def.'s Opening Br. 26.

[31] Pls. RED Capital Investment L.P.'s and George Polk's Opening Post-Trial Br. 26, 29.

[32] *DFG Wine*, 2011 WL 4056371, at *6.

[33] Operating Agmt. § 1.42 (defining RED as a subsidiary of RED Parent "through which the Company shall conduct all its development activities"); *id.* § 1.7 (stating that all assets of RED Parent "shall be held by RED Investment, LLC, a separate limited liability company the sole member of which shall be the Company").

operations of its own,[34] and each entity shares the same computer system, email domain, accounting software, and director and officer insurance policy.[35]

RED Parent attempts to distinguish *DFG Wine* from the present facts. First, it argues that the request in *DGF Wine* sought "books and records" and was not limited to "books of account."[36] As explained above, however, Polk's request, in his capacity as a Manager, is not subject to the "books of account" limitation in Section 10.2(c). Second, the Company argues that each operating subsidiary is legally distinct, created for a legitimate business purpose, and maintains separate books and records.[37] While each RED Investment subsidiary is certainly distinct from other subsidiaries, it does not follow that each is distinct from the parent, to which its value accrues.[38]

---

[34] Trial Tr. 9. In fact, the officers of RED Parent serve as officers or managers of each of RED Investment's operating subsidiaries. *Id.* at 72, 121-22.

[35] *Id.* at 75-77, 143.

[36] Def.'s Opening Br. 25.

[37] *Id.* at 26-27.

[38] While Polk has a strong argument that the subsidiaries are sufficiently connected to RED Parent to warrant inspection by Company members, the Court need not reach this issue. *See infra* note 43 and accompanying text. *DGF Wine* applies in the context of a member's demand for inspection—if Polk's demand were interpreted solely as such, it would be subject to the "books of account" limitation in Section 10.2(c), obviating much of the *DGF Wine* analysis, which is based on a

In *DGF Wine*, however, the at-issue request for subsidiary information was made by an LLC member solely in that capacity.[39] Here, Polk's request was made on behalf of RED Capital as a member of RED Parent, but also in his capacity as a Manager of RED Parent. Managers are entitled to all information falling within Section 18-305(a)(1)-(6) that is "reasonably related to the position of manager."[40] This language is tantamount to that used in 8 *Del. C.* § 220 with respect to director requests for corporate information.[41] As such, LLC managers should be afforded similar "unfettered"[42] access to company books and records, absent restrictions in an applicable LLC agreement. With this context, the Court is unwilling to deprive an LLC holding company's manager of books and records of the company's wholly-owned operating entities—such information is "reasonably related" to a

---

request unrestricted by contractual limitations. *DFG Wine*, 2011 WL 4056371, at *6.

[39] *Id.* at *1.

[40] 6 *Del. C.* 18-305(b).

[41] "Any director shall have the right to examine the corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to the director's position as a director." 8 *Del. C.* § 220(d). "Delaware courts have interpreted Section 18-305 by looking to 'cases interpreting similar Delaware statutes,'" namely, 8 *Del. C.* § 220. *Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011).

[42] *McGowan v. Empress Entm't, Inc.*, 791 A.2d 1, 5 (Del. Ch. 2000).

manager's position as such, and falls within the scope of Section 18-305(a)(1).[43]

Because Polk has stated a proper purpose—*i.e.,* to "understand the current cash financial position at RED" in order to discharge his managerial fiduciary duties[44]—he is entitled to inspection of the information requested[45] to the extent that it is

---

[43] Specifically, Section 18-305 contemplates inspection of "[t]rue and full information regarding the status of the business and financial condition of the limited liability company; . . . [and] [o]ther information regarding the affairs of the limited liability company as is just and reasonable."

[44] JX 32. RED Parent contends that Polk is motivated to further personal interests by ousting the Company's management and obtaining control of the Company. Def.'s Opening Br. 29. This argument relies on the contention that Polk purposefully requested the information solely as a representative of RED Capital so as to not subject himself to managerial fiduciary duties with respect to its eventual use. *Id.* at 28-29. The Court's determination that Polk's request was made in his capacity both as a representative of RED Capital and as a Manager, however, largely resolves this concern. In any event, "[p]roper purpose has been construed to mean that a shareholder's *primary purpose* must be proper, irrespective of whether any secondary purpose is proper." *Grimes v. DSC Commc'ns Corp.*, 724 A.2d 561, 565 (Del. Ch. 1998).

[45] The books and records requested here fall within subsection (1) of Section 18-305(a), that is, "information regarding the status of the business and financial condition of the limited liability company." Because all requested information falls within Section 18-305(a)(1) and is therefore subject to manager inspection, it follows that the scope of the request is sufficiently tailored such that it does not offend the summary nature of Section 18-305 proceedings. *Maitland v. Int'l Registries, LLC*, 2008 WL 2440521, at *2 (Del. Ch. June 6, 2008).

within RED Parent's control or is "in the subsidiary's possession and control and can be obtained through [RED Parent's] exercise of control over the subsidiary."[46]

RED Parent argues that the books and records requested are not under the control of RED Parent or the Casten family because each operating subsidiary has its own contracts and customers and maintains its own financial records, and RED Parent has no direct ownership in the separate operating entities.[47] That the operating entities are distinct from each other, however, does not mandate the conclusion that each is distinct from RED Parent.[48] Further, RED Parent's operations occur solely at the subsidiary entity level,[49] Sean Casten is listed as Chief Executive Officer of all RED entities, and Scott Kerrigan, "the controller of RED Parent, is also the controller of all the subsidiary entities."[50] Such unity of control and management composition is sufficient to subject operating subsidiary information to a proper request by a parent Manager in accordance with Section 18-305(b).

---

[46] *Weinstein Enters., Inc. v. Orloff*, 870 A.2d 499, 508 (Del. 2005); *see also* 8 *Del. C.* § 220(b).

[47] Def.'s Reply Br. 9-10.

[48] *See supra* text accompanying note 38.

[49] *See supra* notes 33-35 and accompanying text.

[50] Trial Tr. 72.

\* \* \*

Because Polk made a proper request in his capacity as Manager[51] and stated a proper purpose, and because the requested information is within RED Parent's control, he is entitled, pursuant to Section 18-305(b), to inspect the requested books and records.[52]

**IT IS SO ORDERED.**[53]

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc: Register in Chancery-K

---

[51] Polk satisfied his burden under Section 18-305(f) to establish that his demand "complied with the provisions of [Section 18-305] respecting the form and manner of making demand for obtaining or examining such information," and that the information demanded "is reasonably related to . . . [his] position as a manager."

[52] RED Parent has provided to Polk much parent-level information. Def.'s Reply Br. 25-26. RED Parent argues the information provided is sufficient to allow Polk to discharge his fiduciary duties. *Id.* at 26; Def.'s Opening Br. 17-20. While this may be the case, the standard is not whether the manager has sufficient information—it is whether the information requested is "reasonably related to the position of manager." 6 *Del. C.* § 18-305. Polk's request, though granted, is therefore limited to information not otherwise produced. In addition, because RED Parent must allow Polk to inspect the identified books and records as a Manager, it is not necessary to determine RED Capital's inspection rights as a member.

[53] The parties shall bear their own costs and attorneys' fees.