Edward T. McGOWAN, Plaintiff,

v.

EMPRESS ENTERTAINMENT,
INC., Defendant.

Civ. A. No. 17780.

Court of Chancery of Delaware,
New Castle County.

Submitted: Sept. 14, 1999.
Decided: Dec. 21, 2000.

William D. Johnston and John J. Paschetto, of Young, Conaway, Stargatt & Taylor, Wilmington; and Joel S. Feldman, Jonathan J. Polish and Shobha Mahadev, Sachnoff & Weaver, Ltd., Chicago, Illinois, for Plaintiff.

Wayne J. Carey, of Prickett, Jones & Elliott, Wilmington; and Suzanne L. Saxman and Mark L. Johnson, of D'Ancona & Pflaum LLC, Chicago, Illinois, for Defendant.

## OPINION

JACOBS, Vice Chancellor.

The plaintiff in this action seeks an order requiring the corporation of which he was a director, to pay the attorneys' fees that he incurred to enforce his right to inspect the corporation's books and records. After the plaintiff demanded those records, the corporate defendant misled him for over 16 months, by promising him both orally and in writing that the books and records would be produced forthwith. Those promises were not kept, and the plaintiff brought this action to enforce his statutory inspection right under 8 *Del. C.* § 220. The result was a settlement that gave the plaintiff all the inspection relief he had requested, but only after he had been forced to incur legal fees and expenses to prepare and file a motion for summary judgment and a supporting brief. The parties, however, were unable to settle one issue: the plaintiff's demand that the corporation pay his attorneys' fees. The parties agreed to carve that issue out of the settlement and have this Court decide it. This is the Court's Opinion on the plaintiff's application for an award of attorneys' fees.

## I. FACTUAL BACKGROUND

The essential facts are undisputed. The plaintiff, Edward McGowan ("McGowan"), was a director and 18.76% shareholder of the corporate defendant, Empress Entertainment, Inc. ("Empress"). Between June 1998 and December 1999, McGowan missed several board meetings because his wife and his son had contracted leukemia. During that time, when McGowan was so preoccupied, the Empress board was deliberating at length over a possible liquidation sale of the corporation's principal

businesses—three riverboats—to Horseshoe Gaming, LLC ("Horseshoe"). Those deliberations culminated in a board decision, made in September 1998, to proceed with that sale.

Because regulatory approvals were needed to complete the sale to Horseshoe, the Empress board continued to hold meetings throughout 1999. In an effort to keep informed of the transaction and the board's actions, McGowan asked Empress's general counsel, Michael Hansen, Esquire ("Hansen"), to send him all minutes and agendas of the board meetings he missed, as well as copies of all documents that had been distributed to the directors at those meetings. Although that request was relatively simple and straightforward, no documents were produced. McGowan then repeated his request at least five times during the period June 1998 through October 1999. After receiving no response to his June 1999 document request, McGowan finally retained an attorney to intervene.

McGowan's attorney then sent to Mr. Hansen a letter dated November 2, 1999, requesting certain board resolutions and minutes for the Empress Entities for the 1999 calendar year. By letter dated November 11, 1999, Hansen responded "I will send you those minutes that have not been approved or are still in draft form by the close of business Monday, November 15." [1]

On November 12, 1999, McGowan's attorney clarified his earlier request, in a letter stating that "In case there was any confusion, I would also appreciate receipt of any written documents or information passed out to directors" at meetings where McGowan could not be present. On November 15, 1999, some of the requested minutes and resolutions, but no handouts,

were furnished to McGowan. In a letter dated November 29, 1999, Hansen told McGowan's attorney, "I acknowledge that I still owe you minutes for 1999 which I will get to you at my earliest convenience this week." [2] Despite that second written promise, McGowan received no other documents.

The sale of Empress's principal businesses to Horseshoe received regulatory approval on November 30, 1999, and the transaction closed on December 1, 1999. Thereafter, Empress was dissolved on December 30, 1999. Making one more effort to avoid litigation, McGowan's attorney again sent to Mr. Hansen a letter, dated January 6, 2000, reiterating his document request. The letter went unanswered. At that point, McGowan concluded that he had no choice but to file this action under 8 *Del. C.* § 220 to compel the production of the documents he had been requesting for the past sixteen months.

McGowan filed this § 220 action on February 10, 2000. On March 2, 2000, Empress filed its answer, alleging ten affirmative defenses. On April 13, 2000, sixteen months after his first request for documents, McGowan filed a motion for summary judgment, together with a supporting brief and affidavits. Empress did not respond to the summary judgment motion. Instead, it chose to settle with McGowan, by furnishing him all the (not-already-produced) documents that he had requested. As noted, the parties were unable to agree on McGowan's demand that Empress pay his attorneys' fees. That issue is the subject of this Opinion.

## II. THE PARTIES' CONTENTIONS AND THE ISSUES PRESENTED

McGowan claims that he is entitled to a "fee shifting" award against Empress, be-

---

1. Hansen Letter dated November 11, 1999.

2. Hansen Letter of November 29, 1999.

cause the undisputed facts show that Empress acted in bad faith both before and after he filed this action, thereby requiring McGowan to incur unnecessary legal expenses to enforce a clear legal right. That showing, McGowan contends, satisfies the legal standard for an award of attorneys' fees under the "bad faith" exception to the "American Rule." McGowan's claim is addressed in Section III A, *infra*, of this Opinion.

Empress contends that it did not act in bad faith, for two reasons. First, because Empress was dissolved before this suit was filed, the plaintiff had no standing to maintain an action under § 220. Therefore, Empress argues, it could not have acted in bad faith by defending against that suit. Second, Empress urges that other undisputed facts upon which it relies compel a judicial finding that it did not act in bad faith. Empress's arguments are considered in Section III B, *infra*.

### III. LEGAL ANALYSIS

■ ■ It is an established principle of Delaware law that each party litigant must normally pay its own attorneys' fees.[3] There are, however, limited exceptions, recognized by courts of equity, to this so-called "American rule." One such exception arises where the plaintiff creates a fund or other benefit for the shareholders. A second exception—upon which the plaintiff relies in this case—permits the Court to order the losing party to pay the prevailing party's attorneys' fees and out-of-pocket expenses, where the losing party

has acted in bad faith in opposing the relief being sought in the lawsuit. A subset of this "bad faith" exception is that attorneys' fees may be awarded if it is shown that the defendant's conduct forced the plaintiff to file suit to "secure a clearly defined and established right."[4] Thus, if McGowan had a clearly established legal right to inspect Empress's books and records, and Empress's conduct forced him to bring this action to secure that right, then the defendant can be found to have acted in bad faith and be ordered to pay the plaintiff's legal fees and expenses.

■ ■ The issue presented here is whether McGowan has shown by clear evidence[5] that Empress acted in subjective bad faith by failing to honor its promises to produce its books and records, and later by opposing McGowan's § 220 action to enforce his legal right to inspect those books and records. I conclude that McGowan had made that showing, and that Empress's arguments to the contrary are without merit.

### A. McGowan's Showing of Empress's Bad Faith

McGowan claims that he is entitled to an award of the attorneys' fees and expenses he incurred in filing and prosecuting this § 220 action, including this fee application. His argument runs as follows: as a director of Empress, McGowan had a clearly established right of inspection under 8 *Del. C.* § 220. Empress promised to honor that right, but never honored its promises. Empress's conduct forced McGowan to file this action. Although Empress ultimately

**3.** *Johnston v. Arbitrium (Cayman Islands),* Del.Supr., 720 A.2d 542, 545 (1998) (citations omitted); *See also, Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1164 (1989).

**4.** *Abex Inc. v. Koll Real Estate Group, Inc.,* Del. Ch., C.A. No. 13462, 1994 WL 728827, Jacobs, V.C., Mem. Op. at 37 (Dec. 22, 1994).

**5.** Because the "bad faith" exception to the American Rule is invoked only in egregious cases, the proof of bad faith must be by "clear evidence." *Slawik v. State,* Del.Supr., 480 A.2d 636 (1984).

agreed to settle the case by giving McGowan essentially all the relief he had sought, that did not occur until after McGowan had been forced to incur the expense of having his attorney prepare (i) a complaint, (ii) a motion and brief in support of his application for summary judgment, and (iii) briefs in support of this application for fees.

McGowan has shown by clear evidence that Empress acted in subjective bad faith, both before and after this § 220 action was filed, by falsely promising to produce corporate records that McGowan was clearly entitled to inspect, and by forcing McGowan to file this lawsuit to vindicate a claim against which Empress had no valid defense. Under Delaware law, a director who has a proper purpose is entitled to virtually unfettered access to the books and records of the corporation.[6] Here, Empress does not dispute that McGowan had a proper purpose—to inform himself of the corporation's activities concerning the impending sale to Horseshoe. It should not, and does not, matter that the corporation viewed McGowan's inspection demand as meriting a low priority. What does matter is that Empress acted to deprive McGowan of his § 220 inspection rights by falsely promising him that the records would immediately be forthcoming, and then by not honoring its promises.

Empress's conduct justified McGowan's conclusion that unless he filed suit, the corporation would continue to stonewall him. Even then, Empress continued to resist until it confronted the inevitable day of reckoning: a motion for summary judgment, which required Empress's counsel to prepare a brief that articulated reasons why Empress's resistance was legally justified. Unable to articulate those reasons (because there were none), Empress finally capitulated and gave McGowan the access to the documents that Empress was required—and had promised—to furnish him sixteen months earlier.

Accordingly, unless Empress can now establish a valid reason why, despite McGowan's clear showing, he is not entitled to an award of attorneys' fees, McGowan's motion must be granted. Empress claims that there are reasons that should operate to negative a fee-shifting award. I turn to the arguments that Empress offers to avoid responsibility for McGowan's legal expenses.

## B. Empress's Anti–Bad Faith Arguments

Empress does not dispute any of the foregoing facts, nor does it dispute that those facts, if viewed in isolation, would permit a finding of bad faith. Rather, Empress argues that the facts upon which McGowan relies cannot be viewed in isolation and do not tell the whole story. Empress insists that there are additional considerations—expressed as one legal and five factual arguments—that compel a contrary finding that Empress's conduct did not amount to bad faith.

### 1. Empress's Legal Argument

First, Empress urges as a threshold matter that its resistance to this lawsuit could not have constituted bad faith, because the corporation had been dissolved before McGowan filed this § 220 action. As a result, Empress says, a first impression issue arose, namely, whether the inspection rights of a former director under § 220 can survive the dissolution of a Delaware corporation. Because the

---

6. *Kortum v. Webasto Sunroofs Inc.*, Del. Ch., C.A. No. 17237, 769 A.2d 113, Jacobs, V.C, Mem. Op. at 8–9 (2000).

Court should decide that issue in Empress's favor and rule that McGowan had no standing to bring this lawsuit to begin with, Empress acted properly in opposing this § 220 action.

I conclude that Empress is precluded from taking this position, for two reasons. First, by settling the § 220 claim, Empress relinquished its right to litigate the standing defense. It cannot now be permitted to litigate a defense that it contracted away, by attempting to resurrect it through the back door as a reason not to grant an attorneys' fee petition.

Second, and apart from the settlement, Empress is estopped by its own inequitable conduct from advancing this argument. The reason is that Empress "by [its] conduct intentionally or unintentionally [led the defendant], in reliance upon that conduct, to change [his] position to his detriment."[7] It is true that McGowan waited sixteen months before filing suit, and that by then Empress had been dissolved. But McGowan did so because Empress had misled him to believe (incorrectly) that he would be receiving the documents at any moment. That belief induced McGowan to stay his hand until after the dissolution that (arguably) deprived him of standing to sue. In these circumstances, Empress cannot be heard to claim that its dissolution deprived McGowan of standing to prosecute this § 220 proceeding. Empress's own intentional and inequitable conduct is what caused McGowan not to bring this lawsuit until after the dissolution had occurred.[8] Accordingly, the "no standing" argument is rejected.

### 2. Empress's Factual Arguments

Although it concedes that it was not as responsive to McGowan's demand as it should have been, Empress contends, nonetheless, that it did not act out of any improper or bad faith motive. In support, Empress advances five separate factual reasons that (it argues) compel the conclusion that it did not act in bad faith. Each of these arguments is discussed.

#### a. Empress Was Too Busy

Empress's first factual argument is that it was simply too busy working on the Horseshoe sale to give McGowan's request the priority McGowan felt it deserved. This argument lacks credibility, because at no point was McGowan told that Empress was "too busy." Rather, at each stage Empress was consistently assuring McGowan that the documents would be promptly forthcoming. Empress's consistent dishonoring of its assurances, both before and after the § 220 lawsuit was filed, shows not only that those assurances were false, but also that McGowan had every reason to believe that unless he filed a lawsuit nothing would change.

#### b. Empress Made Efforts to Keep McGowan Informed

Second, Empress argues that it made continued efforts to keep McGowan informed of the sale negotiations by offering him an opportunity to take part in meetings via teleconference—an opportunity that McGowan declined to take advantage of. Empress also argues that its counsel and its accountants met with McGowan's counsel, and showed them a notebook filled

---

7. *Waggoner v. Laster,* Del.Supr., 581 A.2d 1127, 1136 (1990).

8. Because I find that Empress is estopped from making its standing argument, I do not express any view of the merits of that argument in this Opinion. The estoppel ruling also makes it unnecessary to address Empress's claim that McGowan did not have a proper purpose for bringing his § 220 action because he no longer had any duties as a former director of a dissolved entity.

with documents relevant to the anticipated liquidation.

This argument is nonresponsive to the issue and also merits rejection. It may be true that McGowan could have participated in the board meetings by telephone, but he was not obligated to do so. What McGowan wanted and requested was to inspect the minutes and other documents relating to the meetings that he was unable to attend due to his family members' grave illness. He did not want or ask to be kept informed by some different method. Moreover, the meeting between representatives of Empress and the plaintiff with "notebooks in hand," appears to have been more of a sales effort by Empress's management to obtain McGowan's consent to a particular structure for the transaction, rather than an attempt to furnish McGowan the information he had been seeking. Indeed, the documents in the notebook did not contain that information; they consisted of analyses promoting Empress's proposed liquidation plan.

### c. McGowan Could Have Obtained Some of the Information From the SEC

Third, Empress argues that because its debt was publicly held, McGowan could have obtained copies of documents relevant to the impending sale from the United States Securities and Exchange Commission. This argument is an evasion and obfuscates the issue. It may well be that some of the information McGowan had been requesting was publicly available. But so what? That fact did not excuse Empress's refusal to honor McGowan's clear statutory inspection right. That argument, if accepted, would eviscerate the right guaranteed by § 220.

### d. Granting McGowan's Request Would Delay the Winding-Up

Fourth, Empress contends that to grant McGowan's inspection request after his complaint was filed would have delayed Empress's winding up process without providing any benefit to the corporation or its shareholders. Again, even if that were true, so what? Section § 220 does not require any showing of benefit to the corporation or its shareholders. Because that irrelevant fact could not legally justify Empress's conduct, it cannot negative the inference of bad faith that the undisputed facts clearly compel.

### e. McGowan's Prayer For Relief Was Too Broad

Fifth, and finally, Empress argues that the prayer for relief in McGowan's § 220 complaint was overly broad because it demanded "an Order granting the right to inspect corporate books and records for Empress ... and its wholly owned subsidiaries ...." [9] That demand, Empress argues, exceeded that which McGowan had previously made, and therefore raised issues about the propriety of his purpose for seeking inspection.

This argument is also a makeweight. McGowan had requested an inspection of specific categories of books and records. Empress had promised to honor that request. How, then, could the complaint in this action to compel the inspection of those same documents have been overly broad? The answer is: it wasn't. The fact that the complaint employed boilerplate § 220 language in its prayer for relief does not mitigate Empress's bad faith conduct.[10]

\*     \*     \*

Empress has failed to show any justification for not furnishing McGowan with

---

9. Complaint, at 5.

10. The defendant's final argument is that McGowan cannot use § 220 to access the

the documents he demanded. McGowan's entitlement to those documents was clearly prescribed by 8 *Del. C.* § 220. Empress's denial of that entitlement, and its having misled McGowan about its intent to obstruct his exercise of that right, amounted to subjective bad faith and justified the filing and prosecution of this § 220 action. Empress's persistence in defending this action, which caused McGowan to incur needless litigation expense, was but a continuation of that bad faith conduct.

### V. CONCLUSION

For the foregoing reasons, the plaintiff's motion for an award of attorneys' fees and expenses incurred in prosecuting this action (including the expenses of this fee application), is granted. IT IS SO ORDERED.

books and records of the former subsidiaries of Empress, because those subsidiaries were not Delaware corporations. Because Empress has already produced the records of these subsidiaries, that argument is moot.