**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: December 16, 2021
Date Decided: February 8, 2022

David A. Dorey, Esq.
Brandon W. McCune, Esq.
BLANK ROME LLP
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801

Vatican Challenge 2017, LLC
c/o Delaware Secretary of State
401 Federal Street, Suite 4
Dover, Delaware 19901

Alisa E. Moen, Esq.
MOEN LAW LLC
2961 Centerville Road, Suite 350
Wilmington, Delaware 19808

Brian Gottesman, Esq.
GABELL BEAVER LLC
1207 Delaware Avenue, #2
Wilmington, Delaware 19806

RE:  *Badr Abdelhameed Dhia Jafar v. Vatican Challenge 2017, LLC*,
C.A. No. 2020-0151-SG

Dear Counsel:

This Letter Opinion considers, and grants in part, the Receiver's Motion for Fees and Costs (the "Motion").[1]  The Plaintiff is a member of the Defendant LLC, and the underlying litigation sought books and records of the LLC.[2]  The Defendant defaulted, and I entered a judgement by default in favor of the Plaintiff.[3]  The

---

[1] Receiver's Mot. Fees and Costs, Dkt. No. 25 [hereinafter the "Motion"].  I limn here the factual background in abbreviated form, omitting many details I find unnecessary to address the Motion. For instance, the substantive litigation involving the Plaintiff or related entities, and the Defendant, in California and Delaware, only tangentially related to the Motion, is not described.
[2] *See generally* Verified Compl. Pursuant 6 *Del. C.* § 18-305, Dkt. No. 1.
[3] Order, Dkt. No. 10.

Plaintiff then sought appointment of a receiver to oversee production of records; it requested that Alisa Moen, Esq. be so appointed.[4] On December 17, 2020, I appointed Ms. Moen to serve as a receiver (the "Receiver").[5] My order appointing the Receiver (the "Receivership Order"), which adopted the language proposed by the Plaintiff,[6] granted the Receiver "limited powers and duties necessary to enforce compliance with" prior orders in this action mandating the production of certain books and records and awarding certain of the Plaintiff's fees and costs.[7]

The Receivership Order provided that the Receiver would be paid by the Defendant "at her customary hourly rate" and "reimbursed for her fees and out-of-pocket expenses incurred on a monthly basis."[8] On December 24, 2020, after I entered the Receivership Order, the Receiver and the Plaintiff's counsel discussed the matter telephonically, during which the Receiver advised that her rate was $500 per hour.[9] The Receiver also sent an engagement letter to the Plaintiff's counsel and the Defendant's manager, Eric Harr, on January 13, 2021, confirming her $500 hourly fee.[10] To be clear, the Receiver was appointed at the request of, on the terms

---

[4] *See* Proposed Order, Dkt. No. 17.
[5] *See* Order, Dkt. No. 18.
[6] *See* Proposed Order, Dkt. No. 17.
[7] *See* Order, Dkt. No. 18 ¶ 1. On February 11, 2021, I entered an amended Receivership Order clarifying that "[t]he Receiver shall 'step into the shoes' of" the Defendant and related entities to carry out the Receiver's duties. *See* Am. Order, Dkt. No. 21 ¶ 2–3 [hereinafter the "Receivership Order"].
[8] Receivership Order ¶ 5.
[9] Motion ¶ 17.
[10] Motion, Ex. C.

suggested by, and for the benefit of, the Plaintiff.[11]  Where an officer is appointed to act on behalf of litigants, it is essential that the officer (unless otherwise so informed) have an expectation of payment, and be able to vindicate that expectation. Otherwise, well-qualified people will decline to serve, and the interests of justice impaired accordingly.

The Receiver thereafter began incurring fees and costs in connection with this matter.[12]  Per the Receiver, she did not forward her invoices to the Defendant, even though the Defendant was obligated to pay them under the Receivership Order, because she understood based on her investigation that the Defendant had no assets from which to pay the fees, and because Harr refused to engage with her.[13]  Instead, she submitted her invoices to the Plaintiff's counsel, requesting payment from the Plaintiff.[14]  On May 11, 2021, the Receiver filed a letter with the Court stating that she and the Plaintiff had formed a disagreement regarding whether the Plaintiff was responsible for the Receiver's fees in light of the Defendant's apparent insolvency and recalcitrance.[15]  The Plaintiff filed a letter response on May 25, 2021.[16]

---

[11] *See* Proposed Order, Dkt. No. 17.
[12] *See generally* Motion, Ex. G.
[13] Motion ¶ 22.
[14] *See generally* Motion, Ex. D.
[15] Dkt. No. 23.
[16] Dkt. No. 24.

The Receiver then filed the Motion on July 1, 2021, seeking to hold the Plaintiff liable for her fees.[17] The Plaintiff filed a response on August 2, 2021, challenging, for the first time, the reasonableness of the Receiver's fees and arguing that the Defendant, and not the Plaintiff, should be responsible for them per the Receivership Order.[18] The Receiver filed a reply brief on August 13, 2021.[19]

I heard argument on the Motion on August 17, 2021 and August 24, 2021. At the August 24, 2021 hearing, I stated that if the Defendant did not pay the Receiver's reasonable fees by a date certain, I would require the Plaintiff to pay them, and allow the Plaintiff to then seek recoupment from the Defendant. I also instructed the Receiver to file an affidavit outlining her fees and costs, and to incur no more fees attempting to fulfill her receivership duties. On August 25, 2021, the Receiver submitted an affidavit of her fees and costs incurred in this matter, totaling $122,997.31.[20]

On September 2, 2021, I entered an order finding that the Receiver incurred $122,997.31 in fees and costs "within the scope of her duties" and requiring the Defendant to pay or object to that amount within thirty days (the "Fee Order").[21] The Fee Order also stated that if the Defendant failed to pay the Receiver's fees and

---

[17] *See generally* Motion.
[18] Pl.'s Resp. Receiver's Mot. Fees and Costs, Dkt. No. 27 [hereinafter "Pl.'s Response"].
[19] Receiver's Reply Supp. Mot. Fees and Costs, Dkt. No. 29 [hereinafter "Receiver's Reply"].
[20] Receiver's Aff. Fees and Costs, Dkt. No. 32 ¶ 2.
[21] Order Governing Receiver's Fees and Costs, Dkt. No. 39 ¶¶ 1–3 [hereinafter the "Fee Order"].

costs, the Court would "make a separate determination as to whether it is appropriate to hold [the] Plaintiff responsible for all or part of the Receiver's Fees and Costs."[22] The Fee Order further required the Receiver to "immediately produce to [the] Plaintiff all documents within her possession, custody, and control obtained in her role as Receiver and [to] file with the Court her preliminary report, at no extra cost," and relieved the Receiver of her duties in this matter once she did so.[23] The Receiver filed the preliminary report on September 3, 2021.[24]

On September 7, 2021, the Plaintiff filed a motion to hold the Defendant, and Harr in his personal capacity, in civil contempt for failing to comply with the Fee Order and several other orders in this matter.[25] The Defendant failed to pay or object to the Receiver's fees and costs within thirty days as required by the Fee Order. I held a rule to show cause hearing on October 4, 2021, during which I held the Defendant in contempt for failing to comply with the Fee Order, among other orders.[26]

On October 29, 2021, the Receiver submitted a supplemental affidavit indicating that she had incurred $15,714.25 in additional fees and costs in connection with this matter since the August 25, 2021 affidavit, bringing the total to

---

[22] *Id.* ¶ 5.
[23] *Id.* ¶¶ 6–7.
[24] *See* Receiver's Preliminary Report, Dkt. No. 40.
[25] Pl.'s Mot. Civil Contempt, Dkt. No. 41.
[26] Tr. of Rule to Show Cause Hearing (Oct. 4, 2021), Dkt. No. 49, at 14:12–18; *see also* Continuing Order Show Cause, Dkt. No. 50 ¶ 1.

$138,711.56.[27]  The Plaintiff submitted a letter objecting to the additional fees and costs on November 9, 2021,[28] and the Receiver submitted a reply letter on November 15, 2019.[29]  I held a hearing on the supplemental affidavit on December 16, 2021, and I consider the Motion fully submitted as of that date.

## I. ANALYSIS

As I noted above, I have already held that the Plaintiff is responsible for the Receiver's reasonable fees and costs incurred if the Defendant fails to pay them.  The Defendant has failed to make the payment, and has been held in contempt for that failure.[30]  Where a receiver is appointed at the request of and for the benefit of a party, and there is no fund out of which expenses can be paid, equity requires that that party is responsible for the receiver's fee.[31]  Here, the first responsibility for compensating the Receiver was placed, appropriately, on the defaulting Defendant. I have held that party in contempt for failure to comply.  The Receiver remains unpaid, and the benefiting party, the Plaintiff, must front the cost; I have permitted

---

[27] Receiver's Suppl. Affidavit Fees and Costs, Dkt. No. 53 ¶¶ 2, 4–5.
[28] Dkt. No. 55.
[29] Dkt. No. 56.
[30] Tr. Rule to Show Cause Hearing, Dkt. No. 49, at 14:12–18; *see also* Continuing Order Show Cause, Dkt. No. 50 ¶ 1.
[31] *Brill v. Southerland*, 14 A.2d 408, 413 (1940) ("Where there is no fund out of which expenses can be paid, or the fund is insufficient, the usual rule is that the party at whose instance the receiver was appointed should be required to provide the means of payment."); *Longoria v. Somers as Tr. of Charles Somers Living Tr. Dated Nov. 2002*, 2019 WL 2270017, at *3 (Del. Ch. May 28, 2019) (same); *Leslie v. Telephonics Off. Techs., Inc.*, 1993 WL 547188, at *13 (Del. Ch. Dec. 30, 1993) (imposing receivership "costs upon the shareholder plaintiffs, who perceive[d] benefits to the appointment of a receiver" and requested the appointment).

the Plaintiff to stand in the shoes of the Receiver to seek recovery for these fees and costs from the Defendant. Accordingly, the only issue remaining is the reasonableness of the Receiver's fees and costs.

"To assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct."[32] Those factors are "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."[33]

"Determining reasonableness does not require that this Court examine individually each time entry and disbursement."[34] "Instead, the Court will consider the Rule 1.5(a) factors as a guide and then exercise its discretion in reaching a

---

[32] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245–46 (Del. 2007).
[33] *Id.* at 246.
[34] *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010).

reasonable fee award, acknowledging that 'mathematical precision' is neither necessary nor readily achievable."[35]

As an initial matter, in the Fee Order, I required the Receiver to "immediately produce to [the] Plaintiff all documents within her possession, custody, and control obtained in her role as Receiver" and to "file with the Court her preliminary report, at no extra cost."[36] I further held that the Receiver was relieved of her duties in this matter once she had done so.[37] Accordingly, the Receiver is not entitled to any fees and costs incurred after I entered the Fee Order.

With respect to fees and costs incurred before the Fee Order, the Receiver seeks payment from the Plaintiff for two categories: first, fees and costs incurred in connection with performing her duties under the Receivership Order; and second, fees and costs incurred in her fee collection effort, including bringing the instant Motion (the "fees on fees"). I consider them in turn.

*A. Fees and Costs Relating to Receivership Duties*

I first consider the Receiver's fees and costs relating to her duties under the Receivership Order. The Plaintiff argues that the Receiver's fees and costs are unreasonable because they are "disproportionate to the work [the Receiver]

---

[35] *Macrophage Therapeutics, Inc. v. Goldberg*, 2021 WL 5863461, at *2 (Del. Ch. Dec. 10, 2021).

[36] Fee Order ¶ 6.

[37] *Id.* ¶ 7.

performed, [the] Receiver's divergence from her Court-ordered scope, and the results actually achieved."[38]

Upon review, I find that the Receiver's fees and costs related to her duties under the Receivership Order are reasonable.  I note that the Plaintiff does not take issue with the Receiver's hourly rate, of which the Plaintiff has been on notice since December 2020, when the Receiver first became involved in this matter.[39]  I also note that the Plaintiff acknowledges that the fees incurred through March 2021, amounting to approximately $50,000, are "arguably reasonable."[40]

The Plaintiff asserts that the Receiver's bills for over "35 hours in communications and 50 hours of document review" through March 2021 were "excessive."[41]  The Plaintiff also challenges the Receiver's invoices for a status report, amounting to over $30,000.[42]  Nothing in the record supports the notion that these invoices were "excessive" or "disproportionate."  Simply put, the Plaintiff has articulated no basis to doubt the Receiver's professional judgment that the communications, document review, and time spent on the status report were necessary to her duties under the Receivership Order.  In my view, the time entries reflect that the Receiver "took care to present a well-supported, well-researched

---

[38] Pl.'s Response ¶ 4.
[39] Motion ¶ 17; *see also* Motion, Ex. C.
[40] Pl.'s Response ¶ 21.
[41] Dkt. No. 36 at 3.
[42] *See id.* at 1; Pl.'s Response ¶¶ 20–21.

[report]" and to diligently collect books and records owed to the Plaintiff.[43] Importantly, because of the Defendant's recalcitrance, the Receiver was forced to seek the Defendant's books and records from third parties, including the Defendant's members, portfolio companies, law firm, accounting firm, and bank.[44] In this context, the Receiver's time entries are "within the range of what a party reasonably could incur over the course of [several] months pursuing a[] [defendant] engaged in a 'mix of open defiance, evasion and obstruction.'"[45] I therefore reject the Plaintiff's argument that the Receiver's fees and costs are "excessive."

The Plaintiff next contends that the Receiver veered from the scope of the Receivership, including by "writing a letter to Cardinal Turkson" and contacting Harr's attorney in a related California action.[46] But the Plaintiff offers no basis for his position that these actions were "extra-scope."[47] As I noted above, the Receiver contacted third parties because of the Defendant's refusal to engage with the Receiver or comply with the orders in this matter. Again, nothing in the record suggests that the Receiver lacked a good faith professional judgment that these actions were necessary to perform her duties under the Receivership Order. I therefore reject the Plaintiff's argument to the contrary.

---

[43] *See Macrophage*, 2021 WL 5863461, at *2.
[44] *See* Motion, Exs. D, E; Pl.'s Response, Exs. A, C.
[45] *Aveta*, 2010 WL 3221823, at *6 (citation omitted).
[46] Dkt. No. 36 at 3–4.
[47] Dkt. No. 36 at 4.

Finally, the Plaintiff asks the Court to find that the Receiver's fees and costs are "disproportionate" to the Plaintiff's $250,000 equity investment in the Defendant that is the source of the Plaintiff's inspection right.[48] But the Receiver was not taking actions based on the Plaintiff's right to recoup its investment. Instead, she was acting pursuant to the Court order the Plaintiff itself had advocated, in this books-and-records action. The Plaintiff, moreover, was aware of the effort being incurred by the Receiver, and did not ask the Court to intervene.

The Receiver expended effort based on this Court's order, and the reasonableness of the fees incurred is not measured in relation to the amount the Plaintiff was willing to incur as a business decision in light of its investment. Instead, the Receiver's fees and costs need to be proportionate to the results she achieved pursuant to her role,[49] which was to enforce my orders mandating the production of books and records. The Receiver collected and compiled detailed information regarding the Defendant's financial status and transaction history before I relieved her of her duties.[50] I find that her fees and costs are reasonable and proportionate to that result.

---

[48] Pl.'s Response ¶ 4.

[49] *Mahani*, 935 A.2d at 246 (in assessing reasonableness of attorney's fees, factors include "the amount involved and the results obtained").

[50] *See* Motion, Exs. D, E; Pl.'s Response, Exs. A, C; *see also* Pl.'s Response ¶¶ 9, 11, 17, 23 & n.4, 40.

*B. Fees on Fees*

Turning to the fees on fees, I decline to hold the Plaintiff or the Plaintiff's counsel responsible. "Generally, litigation in this Court follows the 'American Rule,' where each side pays its own litigation costs,"[51] "absent some special circumstances that warrant a shifting of attorneys' fees, which, in equity, may be awarded at the discretion of the court."[52]

To obtain fee shifting, a party must successfully invoke an exception to the American Rule.[53] The bad faith exception is one such, but it is "not lightly invoked," and is available "only in egregious cases."[54] As a result, "the party seeking a fee award [on that basis] bears the stringent evidentiary burden of producing 'clear evidence' of bad-faith conduct."[55] "Bad faith means a litigation position in furtherance of abuse of process that is manifestly incompatible with justice."[56]

---

[51] *GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*, 2019 WL 1501553, at *3 (Del. Ch. Apr. 4, 2019).

[52] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850 (Del. Ch. 2005). Nothing in this Letter Opinion should be read to relieve the Defendant from responsibility for the Receiver's fees-on-fees.

[53] *See Juul Labs, Inc. v. Grove*, 238 A.3d 904, 917 (Del. Ch. 2020).

[54] *Beck*, 868 A.2d at 851; *McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 4 n.5 (Del. Ch. 2000). Other exceptions to the American Rule, such as the "common fund doctrine" and the "common benefit doctrine," exist only where "the litigation results in the creation of a fund over which the court has some level of control" or "where a shareholder's suit has resulted in a significant, substantial[,] . . . non-monetary[] benefit to the entire corporation." *Korn v. New Castle Cty.*, 2007 WL 2981939, at *2 n.12 (Del. Ch. Oct. 3, 2007). That is not the case here.

[55] *Beck*, 868 A.2d at 851.

[56] *Donnelly v. Keryx Biopharmaceuticals, Inc.*, 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019).

12

Although the Receiver does not explicitly assert the bad faith exception, she asks this Court to exercise its "discretion to shift fees" "to Plaintiff and his counsel due to Plaintiff's counsel's conduct in precipitating this motion practice and inducing the Receiver to incur further fees and costs."[57] Specifically, the Receiver asserts that the Plaintiff's counsel made statements to the Receiver indicating that the Plaintiff would pay her fees, including that he was "working on it" and asking for "patience," citing "cultural issues," before ultimately taking the position that the Plaintiff was not obligated to pay them.[58] The Receiver also contends that the Plaintiff's counsel failed to respond promptly to her questions, including about the payment of her fees, while continuing to accept the benefits of the Receiver's work.[59]

I do not find that this conduct, based on the record before me, amounts to bad faith or otherwise justifies equitable fee shifting. The statements from the Plaintiff's counsel regarding responsibility for the Receiver's fees were equivocal, and thus could not have "induc[ed]" the Receiver to believe that the Plaintiff had agreed pay them. Moreover, the Plaintiff's ultimate position that he is not obligated to pay the Receiver's fees, while not triumphant, was consistent with the Receivership Order, which assign that obligation to the Defendant.[60] Even to the extent that the Plaintiff's

---

[57] Receiver's Reply at 6–8.
[58] *Id.* at 7–8.
[59] *Id.* at 6.
[60] Receivership Order ¶ 5.

counsel temporized in discussions regarding payment of the Receiver's fees while continuing to accept the Receiver's work, while that supports my decision to place responsibility for the fees on the Plaintiff, I do not find that to be the type of "egregious" conduct requiring a departure from the American Rule.[61] The Receiver has not suggested another basis for shifting fees on fees onto the Plaintiff. Accordingly, the Plaintiff is not required to pay the cost of the Receiver's fee litigation.

I note that it is unclear whether certain of the Receiver's time entries reflect fees on fees. For example, certain time entries are billed for a "mediation statement."[62] Although it is unclear from the record, the instant Motion suggests that the Receiver drafted this mediation statement for the purpose of seeking her fees and costs.[63] To the extent that the mediation statement was drafted for the purpose of seeking her fees and costs in this matter, they are fees and fees that the Receiver is not entitled to collect from the Plaintiff. To the extent other entries reflect fees-on-fees, those should be excluded, as well.

---

[61] *McGowan*, 791 A.2d at 4.

[62] *See, e.g.*, Receiver's Aff. Fees and Costs, Ex. A, Dkt. No. 32 at 3–5.

[63] *See* Motion ¶ 27 ("On June 14, 2021, the Receiver questioned Mr. Dorey regarding the upcoming mediation and requested that the Receiver be informed when mediation is scheduled, to ensure that the Receivership fees would be addressed as part of the global resolution.").

*     *     *

The Receiver should submit an updated affidavit of fees and costs to the Court that excludes any (i) fees on fees and (ii) fees and costs incurred after I entered the Fee Order. The Plaintiff is required to pay the Receiver's fees and costs incurred in this matter before the Fee Order, excluding fees on fees. Post-judgment interest will accrue at the legal rate beginning sixty days after the filing of the Receiver's updated affidavit.

For the forgoing reasons, the Receiver's Motion is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc:     All counsel of record (by *File & ServeXpress*)