**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report: April 8, 2024
Date Submitted: April 5, 2024

Patricia L. Enerio, Esquire
Elizabeth A. DeFelice, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, Delaware 19801

Elizabeth Wilburn Joyce, Esquire
Megan Ix Brison, Esquire
Pinckney, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806

RE: *Ali Hashemi v. All.Health, Inc.*,
C.A. No. 2023-0924-BWD

Dear Counsel:

This letter report resolves plaintiff Ali Hashemi's ("Plaintiff") Motion for an Award of Fees and Expenses (the "Fee Motion") in this books and records action. As explained below, I recommend that the Fee Motion be denied.

## I. BACKGROUND

The following facts are set forth in my February 27, 2024 oral post-trial final report in this action (the "Post-Trial Final Report"). *Hashemi v. All.Health, Inc.*, C.A. No. 2023-0924-BWD (Del. Ch. Feb. 27, 2024) (TRANSCRIPT) [hereinafter, "Final Report"], Dkt. 54.

Plaintiff is a director of All.Health, Inc. ("All.Health" or the "Company"), a Delaware corporation that markets itself as having developed a healthcare platform

using technology to provide real-time, at-risk screening for several health conditions. Final Report at 4:17-24.  Plaintiff, who serves as the managing director of non-party Polymath Holdings ("Polymath"), joined All.Health's four-member board of directors (the "Board") in 2019, when Polymath purchased a $2.5 million convertible note from All.Health.  *Id*. at 5:7-6:2.  Plaintiff is also the co-founder and chairman of non-party GluCare Integrated Diabetes Center LLC ("GluCare"), a healthcare technology company that recently partnered with All.Health competitors to incorporate data from wearable technology into its clinical framework.  *Id*. at 5:11-22.

Beginning in 2019, All.Health considered transferring its intellectual property in the diabetes sphere into a separate company.  According to the Company, Plaintiff "advocate[d] forcefully that the separate company be owned by and under [Plaintiff's] control, with All.Health as a minority shareholder, thereby giving [Plaintiff] a direct ownership stake in All.Health's intellectual property."  *Id*. at 6:5-13.  In addition, in late 2021, All.Health sought to negotiate an agreement with GluCare to license All.Health's technology.  *Id*. at 7:5-7.  On January 13, 2022, the Board voted to form a committee comprised of all directors except Plaintiff (the "Committee") and delegated to it "all powers and authority of the Board related to any transaction or potential transaction involving GluCare . . . ."  *Id*. at 7:12-18.

In early 2022, Plaintiff, Polymath, and GluCare expressed concerns to All.Health that the state of All.Health's technology was not as the Company had represented to them. *Id*. at 7:19-23. On March 21, 2022, the Company informed Plaintiff that he would be excluded from Board discussion on "any matter related to [A]ll.[H]ealth's potential dispute with GluCare[,]" including all "decisions about product roadmap, allocation of engineering resources, personnel, pricing, and the relative prioritization of various customers and features." *Id*. at 8:13-24. Since then, All.Health's directors have not met as a Board but the three directors other than Plaintiff purportedly have met as a Committee. *Id*. at 8:9-12.

On July 27, 2022, Polymath initiated litigation against All.Health, its CEO Hosain Rahman, and others in California Superior Court asserting claims for fraudulent and negligent misrepresentation and breach of contract (the "California Action"). *Id*. at 9:14-22. In the California Action, Polymath alleges that All.Health and Rahman fraudulently induced it to invest in the Company by misrepresenting key features of the Company's technology. *Id*. at 9:22-10:2. Also on July 27, 2022, GluCare initiated an arbitration against All.Health and Rahman in the International Chamber of Commerce in London (the "London Arbitration"). *Id*. at 10:23-11:3. The London Arbitration demand asserts claims for fraudulent and negligent

misrepresentation and breach of contract arising from a licensing agreement between a Polymath affiliate, Lux2 InvCo, and All.Health. *Id*. at 11:3-9.

On September 11, 2023, Plaintiff filed this action to compel inspection of the Company's books and records under 8 *Del. C.* § 220(d). *Id*. at 12:1-3. Plaintiff then narrowed his inspection request, and on October 9, 2023, filed an amended complaint. *Id*. at 12:4-6.

The Court held a paper trial on February 20, 2024. At trial, All.Health asserted that Plaintiff's stated purpose for seeking books and records—to satisfy his fiduciary duties as a director—was not his actual purpose, and that Plaintiff actually sought inspection for several other, improper purposes: to obtain All.Health's intellectual property for GluCare and himself; to aid GluCare and All.Health's competitors; to gain an advantage in ongoing litigations against the Company; and to publicly malign the Company to destroy its reputation. All.Health further argued that the scope of Plaintiff's demand was overbroad and the Court should impose certain conditions on any inspection. *Id*. at 16:7-18.

On February 27, 2024, I issued the Post-Trial Final Report, finding the Company had not met its burden to prove by a preponderance of the evidence that Plaintiff lacked a proper purpose for seeking books and records; Plaintiff was

entitled to most, but not all, of the books and records sought; and some, but not all, of All.Health's requested conditions should be imposed on Plaintiff's inspection. *Id*. at 24:23-25:3, 30:13-39:1, 39:2-43:11.

The Post-Trial Final Report also noted that "[P]laintiff ha[d] moved to shift his fees incurred in connection with this litigation onto the [C]ompany[,]" and permitted Plaintiff to "file a motion for fees within 14 days." *Id*. at 43:16-19. On March 12, 2024, Plaintiff filed the Fee Motion. Pl.'s Mot. For An Award Of Fees And Expenses [hereinafter, "Mot."], Dkt. 52. All.Health filed its opposition to the Fee Motion on March 26, 2024. Def. All.Health's Opp'n To Pl.'s Mot. For An Award Of Fees And Expenses [hereinafter, "Opp'n"], Dkt. 59. Plaintiff filed a reply on April 5, 2024. Pl.'s Reply In Further Supp. Of His Mot. For An Award Of Fees And Expenses [hereinafter, "Reply"], Dkt. 62. Oral argument is unnecessary.

## II.    ANALYSIS

"Delaware courts follow the American Rule that 'each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation.'" *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *29 (Del. Ch. Nov. 24, 2020 (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)). An exception exists in equity, however, when a party litigates in bad faith. *Rice v. Herrigan-Ferro*, 2004 WL 1587563, at *1 (Del. Ch. July 12, 2004).

A party seeking to shift fees must satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad-faith . . . ." *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)). To warrant fees, a litigant's conduct must be "glaring[ly] egregious[]." *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *6 (Del. Ch. July 7, 2023). "Bad faith is not something this court takes lightly, and it should not be alleged lightly." *Donnelly v. Keryx Biopharmaceuticals, Inc.*, 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019).

In "extraordinary circumstances," "overly aggressive litigation strategies" improperly employed to resist a books and records demand may warrant fee-shifting. *Pettry*, 2020 WL 6870461, at *29-30 (citation and internal quotation marks omitted). Before and after *Gilead*, the Court has used its "power to shift fees as a tool to deter abusive litigation tactics." *Id.* at *2.[1]

---

[1] *Compare, e.g.*, *PVH Polymath Venture Hldgs. Ltd. v. TAG Fintech, Inc.*, 2024 WL 371084, at *9 (Del. Ch. Jan. 31, 2024) (shifting fees where the defendant "[s]ought to needlessly complicate and delay the proceedings, including by (1) producing an expert opinion attempting to inject new issues under Cyprus law after the discovery deadline; (2) purporting to unilaterally cancel Plaintiff's shares on the eve of the pre-trial conference and seeking to postpone trial on that basis; (3) insisting on the presentation of live testimony at trial when, under the circumstances, the disputed issues could easily have been resolved on the papers; (4) refusing to stipulate to the authenticity of most documents at trial; and (5) requiring Plaintiff to inspect the Company's books and records in person in Abu Dhabi" (footnotes omitted)); *Myers v. Acad. Sec., Inc.*, 2023 WL 6380449, at *2 (Del. Ch.) (granting partial fee award where the defendant "forced the parties to litigate [a]

Plaintiff here does not contend that All.Health employed abusive litigation tactics.[2] Plaintiff argues, instead, that the Company forced him to file this lawsuit even though his "entitlement to exercise inspection rights was clear." Mot. ¶¶ 25-26. All.Health counters that it raised reasonable defenses in good faith, emphasizing

---

baseless standing defense through trial" and "raised other baseless factual assertions and legal red herrings"), *R. & R. adopted*, 2023 WL 6846984 (Del. Ch. 2023); *Seidman*, 2023 WL 4503948, at *6-8 (shifting fees where the defendant "took a series of litigation positions that, when viewed collectively, were glaringly egregious," including taking "aggressive positions in discovery" and making "demonstrably false statements" in briefing); *and Pettry*, 2020 WL 6870461, at *30 (shifting fees where the defendant "block[ed] legitimate discovery, misrepresent[ed] the record, and t[ook] positions for no apparent purpose other than obstructing the exercise of Plaintiffs' statutory rights"); *with Mellado v. ACPDO Parent Inc.*, 2024 WL 481034, at *3 (Del. Ch. Feb. 8, 2024) (declining to shift fees where "Plaintiff's litigation positions . . . d[id] not . . . reflect an 'abuse of process that is manifestly incompatible with justice' or 'an attempt to game the system' in bad faith" (citation omitted)); *Myers*, 2023 WL 6380449, at *3 (partially denying a request to shift fees where the defendant's positions on motions to compel were not unreasonable, counsel acted quickly to correct a misstatement in briefing that reflected "an honest mistake rather than bad faith conduct," and defendant "took some reasonable positions in the litigation that streamlined the proceedings, including by (1) agreeing to a trial on a paper record rather than insisting on the presentation of live testimony, and (2) taking a targeted approach when addressing the scope of the Demand"); *Meehan v. Tiger Analytics, Inc.*, 2023 WL 6053017, at *3-4 (Del. Ch.) (denying a request for fees where "[t]he Company's initial efforts to respond to the Demand were dilatory, but on the whole, its conduct was not 'glaringly egregious,'" rejecting arguments that the defendant took unreasonable positions on confidentiality and wrongfully resisted discovery), *R. & R. adopted*, 2023 WL 6215084 (Del. Ch. 2023); *and Dearing*, 2023 WL 2632476, at *7 (denying fee-shifting where the defendant's discovery "process could have been better, but the Court [wa]s not persuaded that th[e] issue, when viewed in context, warrant[ed] a finding of bad faith").

[2] Although Plaintiff asserts that "All.Health's conduct before, during, and even after trial evidences its desire to block [Plaintiff] from full and complete information regarding All.Health[,]" he does not identify abusive tactics that the Company employed while litigating this case. Mot. ¶ 28.

that, although the Court found All.Health failed to meet its burden to prove that Plaintiff lacked a proper purpose for inspection, the Court also conditioned inspection on a confidentiality order prohibiting Plaintiff from sharing books and records with its California counsel due to "a legitimate risk that the documents sought through the books and records demand could be used to advance Polymath's interests in the California [A]ction to the detriment of the [C]ompany . . . ." *See, e.g.*, Opp'n ¶ 9 (quoting Final Report at 42:8-15).

"[A]ttorneys' fees may be awarded if it is shown that the defendant's conduct forced the plaintiff to file suit to 'secure a clearly defined and established right.'" *McGowan v. Empress Entm't, Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000) (quoting *Abex Inc. v. Koll Real Est. Gp., Inc.*, 1994 WL 728827, at *20 (Del. Ch. Dec. 22, 1994)). But winning on the merits does not automatically entitle a Section 220 plaintiff to fees; again, fee shifting is appropriate in the *rare* event that a party has litigated vexatiously or otherwise acted in subjective *bad faith*.[3] To support a finding of bad

---

[3] *See PVH Polymath Venture Hldgs. Ltd.*, 2024 WL 371084, at *8 (shifting fees where, "[r]ather than consider Plaintiff's Demand in good faith," the defendant asserted a pretextual defense, "forcing Plaintiff 'to file suit to 'secure a clearly defined and established right[ ]'' to inspect books and records"); *Carlson v. Hallinan*, 925 A.2d 506, 546-47 (Del. Ch. 2006) (shifting fees where the "[d]efendants d[id] not dispute that [the] [plaintiff] had a proper purpose" but nevertheless forced "the plaintiff to file suit to secure a clearly defined and established right"); *McGowan*, 791 A.2d at 4-5 (shifting fees where the company "falsely promis[ed] to produce corporate records that [the] [plaintiff] was clearly entitled to inspect," then failed to "honor[] [those] promises," forcing the plaintiff to file

faith here, Plaintiff argues that "[t]he Company has excluded [Plaintiff] from Board meetings for more than two years," "stonewalled or sought to impose burdensome conditions on the inspection," and more recently, "threatened to remove [Plaintiff] from the Board . . . ." Mot. ¶ 28.[4] Plaintiff does not identify any specific conduct reflecting an "abuse of process that is manifestly incompatible with justice" or "an attempt to game the system." *Donnelly*, 2019 WL 5446015, at *6. Plaintiff also claims the Court "found All.Health's opposition to [Plaintiff]'s director inspection rights was not justified" and "unsupported by evidence and based on 'speculation and mistrust.'" Mot. ¶ 29. Although the Court concluded that All.Health failed to meet its burden to prove its improper purpose defense, the Company's "argument[s] w[ere] not frivolous, and [its] failure to satisfy its burden of proof on [a] fact issue

---

the action before "settl[ing] the case by giving [the] [plaintiff] essentially all the relief he had sought"); *Abex*, 1994 WL 728827, at *20 (awarding fees where the defendant "contest[ed] liability, threaten[ed] litigation, and force[d] [the] plaintiffs to prosecute th[e] action and litigate defenses that had no factual or legal merit . . . in order to delay payment of [a] contract obligation").

[4] In his reply, Plaintiff asserts that, "since trial, All.Health has continued its bad-faith conduct towards [Plaintiff] by attempting to remove him as a director in an effort to render his trial victory meaningless . . . ." Reply ¶ 3. As Plaintiff appears to acknowledge, however, the Court cannot determine the validity of Plaintiff's purported removal from the Board through this Fee Motion. *See id.* ¶ 8 n.4 (explaining that Plaintiff "has filed an action under 8 *Del. C.* § 225 seeking a declaration that the purported removal is invalid"). In any event, Plaintiff's purported removal, valid or otherwise, does not provide a basis to shift the costs of litigating this books and records action onto the Company. To be clear, though, nothing herein prevents Plaintiff from moving to enforce the final order or seeking other relief as appropriate.

d[oes] not support a finding of bad faith." *Myers*, 2023 WL 6380449, at \*3 (partially denying a request for fees despite having found the defendant failed to meet its burden to prove by a preponderance of the evidence that the plaintiff had sent harassing emails); *see also Mellado*, 2024 WL 481034, at \*2 (finding "Plaintiff ha[d] not shown that the Company acted in bad faith by improperly withholding books and records to which Plaintiff had "'a clearly defined and established right[,]'" explaining that "although the Court found Plaintiff was entitled to inspect certain categories of books and records, it also found merit in the Company's position that Plaintiff sought books and records for secondary purposes" (citation omitted)); *Gen. Video Corp. v. Kertesz*, 2009 WL 106509, at \*1 (Del. Ch. Jan. 13, 2009) (noting that "the simple fact that" a party's positions "were disproven at trial is not itself clear evidence of bad faith").

 For these reasons, the Fee Motion is denied.

## III. CONCLUSION

 "[L]awyers should think twice, three times, four times, perhaps more before . . . moving for fees under the bad faith exception." *Coughlin v. S. Canaan Cellular Invs., LLC*, 2012 WL 2903924, at \*2 (Del. Ch. July 6, 2012) (first alteration in original) (internal quotation marks omitted) (quoting *Katzman v. Comprehensive Care Corp.*, C.A. No. 5892-VCL, at 13 (Del. Ch. Dec. 28, 2010) (TRANSCRIPT)).

Parties also should be mindful that "[a]n unwarranted motion for fee shifting under the bad faith exception can itself justify a finding of bad faith and fee shifting." *Id.*

Neither party litigated this action in bad faith, and I therefore recommend that Plaintiff's request for an award of attorneys' fees be denied. This is a final report pursuant to Court of Chancery Rule 144. The stay of exceptions entered under the Chancellor's assignment letter is hereby lifted.[5]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery


cc: All counsel of record (by File & ServeXpress)

---

[5] *See* Ct. Ch. R. 144(d)(2) ("In actions that are summary in nature or in which the Court has ordered expedited proceedings, any party taking exception shall file a notice of exceptions within three days of the date of the report.").