**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: July 23, 2024
Date Submitted: March 27, 2024

John M. Seaman, Esquire
Joseph A. Sparco, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Andrea S. Brooks, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19806

Re: *Brian Jones v. FON Holdings, LLC*,
C.A. No. 2023-0968-LM

Dear Counsel:

This matter began as a traditional Books and Records dispute. The Plaintiff issued a demand upon Defendant Company, a Limited Liability Company, pursuant to 6 Del. C. § 18-305 and Section 7.1 of the Third Restated Limited Liability Company Agreement of FON Holdings, LLC (the "LLC Agreement").

Pending before me are the parties' competing motions for fee shifting regarding the Demand. The parties both argue two bases for seeking fee shifting. One is a contractual provision in the LLC agreement. The other is the exception to the American Rule for litigation conducted in bad faith. For reasons further explained herein, I recommend denying both motions for fees. I find neither party to

be a prevailing party under the LLC Agreement nor any bad faith to justify fee-shifting under the American Rule.

## I.   Background

### A.   Plaintiff's Employment with FON Holdings

FON Holdings, LLC (the "Company") provides investment banking, valuation, consulting and related services to the aerospace, defense and government services industries.[1] Plaintiff became employed as the Chief Operating Officer of Biconvex, a division of the Company on or about March 1, 2022.[2] On July 15, 2022, Plaintiff purchased 42,857 Preferred Units of Defendant's stock for $150,000.[3] The investment made him a member of the company, and a party to the Third Amended and Restated Limited Liability Company Agreement dated February 21, 2023 (the "LLC Agreement).[4] On April 13, 2023, Plaintiff resigned his employment with the Company, which constituted a triggering event under Section 10.2(a)(vii) of the LLC Agreement, allowing the Company the right to repurchase the Purchase units within

---

[1] Pl.'s Mot. for fees, ¶ 7.

[2] Compl. ¶ 8; Def.'s Mot., ¶ 2.

[3] Pl.'s Mot., ¶13; Def.'s Mot. ¶2.

[4] *See supra* note 3.

180 days of the triggering event.[5] The deadline for the Company to repurchase the

units was October 10, 2023.[6]

### B. Plaintiff Serves a Demand to Inspect FON Holdings Books and Records

On August 1, 2023 Plaintiff served a demand to inspect books and records under

6 Del. C. § 18-305 and also under Section 7.1 the LLC Agreement.[7] In his demand,

Plaintiff explained that he was seeking books and records for the following purposes:

a) to investigate possible breaches of fiduciary duty, mismanagement, self-dealing, corporate waste, unfair business practices, and improper influence and conduct by David Walsh and other officers, directors or members of the Company;

---

[5] D. I. 7.

[6] D. I. 1 (Compl.) at 26.

[7] D. I. 1 (Exhibit B). Section 7.1 of the LLC agreement states:

> The Company shall keep appropriate books and records pertaining to the business of the Company. The books and records of the Company shall be kept at the principal office of the Company or at such other place, within or without the State of Delaware, as the Board shall reasonably from time to time determine. All books and records of the Company required to be maintained under this Section 7.1, as well as complete and accurate information regarding the Company's business, financial condition and other information regarding the affairs of the Company as is just and reasonable and any other information described in Section 18-305(a) of the Delaware Act, shall be made available upon reasonable demand by any Member for any purpose reasonably related to such Member's interest in the Company, during ordinary business hours, for inspection and copying at the expense of such Member.
> *Id*. (Exhibit A pg. 43-44).

b) to investigate the negotiation process, valuation process, timing and terms of the Company's issuance of 300,000 Founder Class A Common Units to TFH Partners, LP, an entity controlled by George Hanley, on or about April 27, 2020, and whether that transaction complied with the LLC Agreement.[8]

c) to investigate whether the Company complied with the Preemptive Rights provisions of the LLC Agreement in connection with its capital raises in March 2023;

d) to value Plaintiff' Preferred Units in connection with the Triggering Events provision under Section 10.2 of the LLC Agreement;

e) to enable Plaintiff to file his taxes for the 2022 tax year;

f) to consider any remedies to be sought in respect of the foregoing, including but not limited to further communication with the board, potential derivative litigation, or other corrective measures; and

g) to evaluate the independence and disinterestedness of the members of the Board and its advisors.

Specifically, the Plaintiff requested the following documents from January 1, 2020, to the present (unless otherwise indicated):

1. A copy of each federal, state, and local income tax return for the Company;

2. A copy of Mr. Jones' K-1 for 2022;

3. A copy of any written limited liability company agreements and certificates of formation and all amendments thereto, together with executed copies of any written FON Holdings, LLC powers of attorney pursuant to which those limited liability company agreements, certificates, and amendments have been executed;

4. True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute in the future, and the date on which each became a member;

5. The Company's annual and quarterly financial statements, whether audited or unaudited, including but not limited to any balance sheets,

---

[8] *Id.* (Exhibit B).

profit and loss statements, and surplus statements, and including both consolidated and consolidating statements and the accompanying notes to such financial statements;

6. All valuations of the Company, its equity, or its assets;

7. All documents evidencing the Company's issuance of 300,000 Founder Class A Common Units to TFH Partners, LP, an entity controlled by George Hanley, on or about April 27, 2020;

8. Documents sufficient to show the negotiation process, valuation process, timing and terms of any repurchase, cancellation, buyback or other disposition of the 300,000 Founder Class A Common Units formerly owned by TFH Partners, LP;

9. All documents evidencing the transfer of any ownership interest in the Company involving Mr. Walsh, Mr. Hanley or any entity controlled by or affiliated with either of them;

10. Documents sufficient to identify any transactions between the Company and Mr. Walsh, including but not limited to transactions that were or should have been submitted to the Board of Managers for approval;

11. Documents sufficient to show all compensation, reimbursement of expenses, advancement of expenses, loans or other amounts paid or owed by the Company to Mr. Walsh;

12. Documents sufficient to show the Company's processes and procedures for determining and/or authorizing all compensation paid or owed by the Company to Mr. Walsh;

13. Documents sufficient to show the Company's efforts to comply with the Preemptive Rights provisions in the LLC Agreement; and [sic][9]

The Demand also indicated that Plaintiff agreed to treat any documents the Company produced as "attorneys' eyes only until the execution of a customary confidentiality agreement."[10]

---

[9] *Id.* (Exhibit B pg. 5).

[10] *Id.* (Exhibit B at pg. 6).

After communications with the Plaintiff, the Company provided a formal response to the demand on August 15, 2023, in essence, agreeing to produce the majority of the document categories in Plaintiff's Demand. [11]   For two of the document requests (categories 6 and 8 of the Demand), the Company only agreed to partially produce the documents.[12]   For category 6, while the Company agreed to provide the document set, the Company limited the production to "the most recent valuation" as opposed to the Plaintiff's requested period, from 2020.[13]   For category 8, the Company agreed to provide "final transaction documents" as opposed to the "documents sufficient to show the negotiation process, valuation process, timing and terms of any repurchase, cancellation, buyback or other disposition" of the stock formerly owned by TFH Partners, LP under Plaintiff's request.[14]

Plaintiff questioned these and other responses by the Company in an August 18, 2023, letter to the Company.[15]   The Company denied being aware of the additional documents Plaintiff requested in a September 6, 2023 letter.[16]  A few days

---

[11]  D. I. 15 (Exhibit D).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* (Exhibit F).

later, on September 8, 2023, the Plaintiffs produced a standard confidentiality agreement to the Company.[17]  On September 21, 2023, the Company proposed its revision to the confidentiality agreement.[18]

Counsel for the parties exchanged emails following the Company's revision of the confidentiality agreement.[19]  On September 22, 2023, Plaintiff's counsel indicated via email at 4:19 p.m. that he could not agree to many of the changes Defendant's counsel proposed to the confidentiality agreement.[20]  In turn, counsel returned a version with proposed changes and explanations for why they did or did not accept certain suggestions and further requested that a signed copy of the agreement be returned "no later than Monday September 25 at 12:00 p.m."[21]  The Defendant's counsel informed Plaintiff's counsel that she would be out of the office on Monday September 25th due to the Yom Kippur holiday but agreed to provide comments by close of business the following day, Tuesday September 26th.[22]

---

[17] D. I. 15 (Exhibit F).

[18] *Id*. (Def.'s Mot. for fees at ¶5).  Defendant's motion does not cite the actual agreement; however, Plaintiff supplied a redlined copy of the agreement as Exhibit I of the Complaint. The Company struck the prevailing party provision from the proposed confidentiality agreement.  D. I. 1 (Exhibit I).

[19] *Id.* (Exhibit H).

[20] *Id*.

[21] *Id*.

[22] *Id*.

### C. Plaintiff Sues to Compel Inspection

Due to the holiday, the Company's counsel did not respond with a signed copy of the agreement by the September 25th deadline requested by Plaintiff's counsel. On the evening of September 25, 2023, the Plaintiff filed a complaint with this Court to inspect the Company's books and records.[23] Three days later, Chancellor McCormick reassigned this case to me and requested that the parties prepare to resolve this action within sixty days.[24] In accordance with the Chancellor's Assignment Letter, on October 5, 2023 counsel for both parties agreed to and submitted a stipulated scheduling order.[25] Five days later, Defendant answered the complaint.[26] On November 7, 2023, both parties filed a joint status report, agreeing that the disputes over the scope of the Section 220 demands had been resolved.[27] However, both parties asserted that fee-shifting issues still needed to be resolved through litigation.[28]

---

[23] D. I. 1 (Compl.).

[24] D. I. 4 at ¶2.

[25] D. I. 5.

[26] D. I. 7.

[27] D. I. 10.

[28] *Id.*

The cross motions for fees were filed with the Court, simultaneously on February 14, 2024.[29] In addition to the argument under the LLC Agreement, both parties asserted a bad faith argument for fees.[30] I heard oral argument on the motions on March 27, 2024. This is my final report.

## II. Analysis

Both parties claim to be the prevailing party in the litigation.[31] Plaintiff argues that attorneys' fees should be shifted onto the Company because the Company agreed only after Plaintiff brought this lawsuit seeking to "(1) lift an "Attorneys' Eyes Only" ("AEO") restriction which prohibited Plaintiff from inspecting the requested information, (2) produce all information requested in Plaintiff's inspection demand, and (3) repurchase Plaintiff's equity at the Market Valuation required under the LLC Agreement."[32] Plaintiff asserts these three agreements between the parties are sufficient to make him the prevailing party.[33]

---

[29] D. I. 21-22.

[30] D. I. 20.

[31] D. I. 20; D. I. 22.

[32] D. I. 20.

[33] *Id.*

Defendant contests that Plaintiff's requests would have occurred absent the lawsuit.[34] Defendant notes that "the vast majority" of documents requested in the Demand were previously provided to Plaintiff.[35] Defendant further claims this litigation was only brought to leverage a favorable redemption price.[36] Defendant asserts itself as the prevailing party because the Company produced the necessary documents in response to the Demand.[37]

When an operating agreement contains a valid prevailing party provision, Delaware courts will enforce such a provision and in doing so "must honor the language chosen by the parties."[38] Absent an order of the court, I must "evaluate[] the substance of a litigation to determine which party predominated."[39]  When an agreement is silent on the definition of a term, Delaware courts must supply a definition.  Here, case law is clear that the prevailing party in these circumstances is

---

[34] D. I. 15.

[35] *Id.* (Defendant produced 24 of the 29 documents on an AEO basis pending a resolution of the confidentiality agreement).

[36] D. I. 15.

[37] *Id.* ¶ 10-11.

[38] *Autumn Entertainment, Inc. v. Pavr, LLC*, 2019 WL 6878577, at *3 (Del.Ch. Dec. 13, 2019) (citing *Avaya, Inc. v. Charter Commc'ns Hldg. Co., LLC*, 2016 WL 381261, at *3 (Del. Ch. Jan. 29, 2016)).

[39] *Id.* (Citations omitted).

the party who "predominates in the litigation."[40] The party needn't have prevailed on every issue, the Court looks to who's favor the outcome is predominantly in.[41] Finally, "[a]bsent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[42]

### A. No Fee shifting under the LLC Agreement

In both motions, the parties disagree on who qualifies as a "prevailing party" under the provision. Plaintiff's basis for claiming to have predominated the litigation is rooted in his belief that proceeding forward on the Demand through litigation lead to the ultimate production of the books and record requested under inspection. Plaintiff relies on *PAVR*[43] and *Digitz*[44], asserting that Defendant, like the defendant company in *PAVR*, 'consistently recognized' Plaintiffs' right to inspection but only did so after he instituted this litigation.

---

[40] *Curry v. Digitz Sols., Inc.*, C.A. No. 2022-0205-JTL (Del. Ch. Nov. 2, 2022) (TRANSCRIPT) (citations omitted).

[41] *Id.*

[42] *Autumn Entertainment, Inc.*, at *3 (Del.Ch. Dec. 13, 2019) (ORDER) (citing *Aveta, Inc. v. Bengoa*, 2010 WL 3221823, at * 6 (Del. Ch. Aug. 13, 2010)).

[43] *Id.* at *4.

[44] *Digitz Sols., Inc.*, C.A. No. 2022-0205-JTL (TRANSCRIPT).

In *PAVR*, the company's operating agreement provided a right to the plaintiff's request for quarterly financial information in addition to the plaintiff's statutory right under Section 18-305 of the Delaware Limited Liability Company Act.[45] The company had been complying with the operating agreement and providing Plaintiff with the quarterly financial information consistently but abruptly stopped in the fourth quarter of 2017.[46] The Plaintiff made at least nine requests for the information between March and June of 2018.[47] "PAVR either ignored the requests or avoided providing the information."[48] Following those requests, plaintiff sent an official demand for the financial information under both the operating agreement and Section 18-305.[49] In response to the demand, the company notified the plaintiff that it had engaged litigation counsel and notably, did not state any defects in the plaintiff's demand.[50] Two months after plaintiff filed the action, the company produced the requested information.[51] Importantly, the company never

---

[45] *Autumn Entertainment, Inc.*, at *1 (Del.Ch. Dec. 13, 2019).

[46] *Id.*

[47] *Autumn Entertainment, Inc.*, at *2 (Del.Ch. Dec. 13, 2019).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

disputed the Plaintiff's right to the requested information.[52]  Vice Chancellor Zurn

determined the plaintiff was the prevailing party of the litigation and thus entitled to

fees because the company continued to deny the plaintiff's request for documents

despite having recognized the plaintiff's right to the information and justified its

denial by relying issues unrelated to the merits of the claim.[53]

In *Digitz*, the parties settled their books and records dispute shortly before the

company's pretrial answering brief was due.[54] The settlement came following the

Vice Chancellor's denial of the company's motion to compel where he also held that

the plaintiff had a proper purpose as a former director.[55] The parties filed a stipulated

and proposed order of settlement to stay the proceedings and reserved the plaintiff's

right to pursue fees which was granted three days later.[56]  A little over a month later,

the plaintiff moved for fees and Vice Chancellor Laster determined that the plaintiff

was the prevailing party because he had a clear contractual right from the beginning

---

[52] *Id.*

[53] *Autumn Entertainment, Inc.*, at *5 (Del.Ch. Dec. 13, 2019).

[54] C.A. No. 2022-0205-JTL (Del. Ch. Nov. 2, 2022) (TRANSCRIPT).

[55] *Id.*

[56] *Id.*, D.I. 47-48 (C.A. No. 2022-0205-JTL).

and ultimately, the company provided substantially everything that he had asked for.[57]

I don't find *PAVR* or *Digitz* instructive in this instance. *PAVR* differs here because although, like in *PAVR*, the Company does not deny the Plaintiff's right to the information, here, the Company gave the Plaintiff most of the requested information prior to the Plaintiff filing this action. Moreover, the remaining documents produced by the Company after the litigation was filed, were the result of a narrowed down search requests. Furthermore, unlike in *PAVR,* there is no indication that the Company produced the remaining documents and lifted the AEO restriction because of the litigation. Simply because these actions occurred after the lawsuit was filed does not correlate to the belief that they happened *because* the lawsuit was filed when the Company's actions show they were in the process of providing this information and negotiating a confidentiality agreement.

*Digitz* is instructive, but also very particularized for the facts in its case. There, the company did not cooperate with the demand. It initially rejected the demand, then required inspection only in person, and then ultimately produced 32 documents, most of which the plaintiff already received in the past.[58] Due to the uncooperation

---

[57] *Digitz Sols., Inc.*, C.A. No. 2022-0205-JTL (TRANSCRIPT).

[58] *Digitz Sols., Inc.*, C.A. No. 2022-0205-JTL (TRANSCRIPT).

of the company, the plaintiff filed the 220 lawsuit which ultimately settled before trial. In addition, in *Digitz,* the parties settled on the eve of trial with a settlement agreement in front of the court. In both instances, the pre and post litigation positions of the parties drastically changed. Here, not so much. The Defendant here maintained from initially receiving the demand, that it was willing to work with the Plaintiff to provide documents responsive to the Demand. In addition, I reject the Plaintiff's notion that the AEO restriction served as a method to deny the Plaintiff direct access to the documents, when the AEO was first offered as part of the Plaintiff's Demand, and the Company continued to make efforts to come to a mutually agreeable confidentiality agreement, which would remove the AEO restriction.

Plaintiff also likens his case to the plaintiff in *Christian*[59], where Vice Chancellor Cook opined that a prevailing party provision applied where a Company was "litigating and delaying and delaying until the last minute."[60] However, here, I don't find the Company created any unreasonable delays. The Company agreed to the Plaintiff's request to provide relevant documents in its possession on an attorneys

[59] *Gerard J. Christian v. Cultural Experiences Abroad, LLC*, C.A. No. 2023-0558-NAC (Del.Ch. November 13, 2023).

[60] D. I. 59 *(*C.A. No. 2023-0558-NAC) Tr. at 42.

eyes only basis while the parties ironed out a confidentiality agreement. An action that was allowed per the Plaintiff's own demand.[61] I also find that the Company also acted in good faith in continuing discussions and negotiations on the language in the confidentiality agreement and at no time, did the Company refuse to do such.

As previously noted, the Company believes it is the prevailing party because it completed its production of documents in response to the Demand.[62] In addition, in support of their argument, the Company argues that Plaintiff abandoned his claims related to mismanagement, whereas the Company succeeded completely in its efforts in response to the Demand. However, as noted in *PAVR*, a party needn't have prevailed on every issue.[63] Nonetheless, I reject the Defendant's rationale that it is the prevailing party because it produced responsive documents. I also do not find the Plaintiff's arguments persuasive that he is the prevailing party.

Accordingly, I find the facts here show that neither party predominated in the litigation more than the other. Rather, they both equally prevailed in their efforts. Plaintiff to obtain documents in response to the Demand and lift the AEO restriction, and the Defendant to only produce documents it deemed responsive, and to obtain a

---

[61] D. I. 1 (Exhibit B at pg. 6).

[62] Def.'s Mot. ¶ ¶ 10-11.

[63] *Id.*

signed confidentiality agreement. I disagree with both parties that the scenarios they have identified warrant a finding that either party is the prevailing party and each shall pay its own attorneys fees.

## B. Fee Shifting under the American Rule

Defendant also asserts that Plaintiff initiated this litigation in bad faith. "Delaware courts follow the American Rule that 'each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation.'"[64] An exception exists in equity, however, when a party litigates in bad faith.[65] This Court has recognized that in "extraordinary circumstances," "overly aggressive litigation strategies" employed to improperly resist a books and records demand may warrant fee-shifting.[66] A party seeking to shift fees must satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad faith . . . ."[67] To warrant fees, a litigant's conduct must be "glaring[ly] egregious."[68]

---

[64] *Pettry v. Gilead Scis., Inc*., 2020 WL 6870461, at *29 (Del. Ch. Nov. 24, 2020) (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)).

[65] *Rice v. Herrigan-Ferro*, 2004 WL 1587563, at *1 (Del. Ch. July 12, 2004).

[66] *Pettry*, 2020 WL 6870461, at *29-30 (citation and internal quotation marks omitted).

[67] *Dearing v. Mixmax, Inc*., 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (*quoting Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)).

[68] *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *6 (Del. Ch. July 7, 2023).

The Company argues the exception to the American rule. The Company argues that its fees should be shifted onto the Plaintiff because the Plaintiff acted in bad faith in filing this litigation. According to the Company, Plaintiff filed this books and records lawsuit to pressure the Company to redeem Plaintiff's shares at a certain value. Moreover, the Company argues that the Company deliberately filed this litigation on Yom Kippur, when they knew counsel was not available to provide additional comments on the proposed draft of the confidentiality agreement.

The Plaintiff also argues the bad faith exception to the American rule. The Plaintiff argues that the Company refused to comply with the Plaintiff's document request until after litigation was filed. Plaintiff also argues that the Defendant unnecessarily delayed this litigation and refused to lift the AEO restriction to allow the Plaintiff to review the initial documents produced.

Neither party has met the high bar to demonstrate clear evidence of bad faith warranting fee-shifting. Plaintiff has not shown that the Company acted in bad faith by improperly withholding books and records to which Plaintiff had "'a clearly defined and established right[.]'"[69] In addition, as noted previously, the idea that the

---

[69] *Pettry,* 2021 WL 3087027, at *1 (quoting *McGowan v. Empress Ent.*, Inc., 791 A.2d 1, 4 (Del. Ch. 2000)).

Company failed to produce documents, directly to the Plaintiff but did produce the majority of documents to Plaintiff's counsel, is not a showing of bad faith when the Company continued to work with the Plaintiff on a mutually agreeable confidentiality agreement.

With respect to the Company's argument that the Plaintiff's books and records lawsuit was simply to pressure the Company to redeem Plaintiff's shares at a certain value, it seems reasonable that the Plaintiff would file a books and records request when there was uncertainty from the Plaintiff on how the shares would be valued Additionally, *on its own*, I cannot find that Plaintiff acted in bad faith in filing this lawsuit on the Yom Kippur holiday, when he put the Company on notice of his deadline to receive the edits for the confidentiality agreement.

## III. Conclusion

Under the circumstances, I recommend that the Court exercise its discretion to deny both parties' requests for fee-shifting, whether framed under the bad-faith exception to the American Rule or under the LLC agreement as the prevailing party.

Accordingly, both Motions are DENIED. This is a final report. Exceptions may be

taken within three business days pursuant to Court of Chancery Rule 144(d)(2).[70]

                                        Respectfully,

                                        */s/ Loren Mitchell*

                                        Magistrate in Chancery

---

[70] *See* Ct. Ch. R. 144(d)(2) ("In actions that are summary in nature or in which the Court has ordered expedited proceedings, any party taking exception shall file a notice of exceptions within three days of the date of the report.").