# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LYNNE SACHS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0530-SEM |
| | ) | |
| CAREN SACHS, individually and | ) | |
| as attorney-in-fact for DORIS SACHS, | ) | |
| and STEVEN SACHS, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER ON EXCEPTIONS TO ACCOUNTINGS

WHEREAS, this order resolves the issues left open in my March 7, 2023 post-trial final report, which was adopted on March 22, 2023 (the "Report");[1] capitalized terms not defined herein shall have the meaning used in the Report; I decline to provide an extensive background, which can be found in, and is adopted from, the Report;

WHEREAS, on June 13, 2023, I granted an implementing order, in pertinent part (1) requiring Caren to prepare and submit a formal accounting within 60 days addressing her actions from December 16, 2014 through the death of the Decedent, (2) permitting Lynne to submit a response to the accounting within 30 days of

---

[1] Docket Item ("D.I.") 135, 136 (adopted).

submission, and (3) reserving the ability to schedule an evidentiary hearing as necessary regarding the accounting and any response thereto;[2]

WHEREAS, in the implementing order, I explained the accounting must cover Caren's actions "from December 16, 2014 through the death of the Decedent including but not limited to actions taken in connection with (1) all financial accounts of Decedent, including but not limited to the PNC Account, the Capital One Accounts, and the Annuity, (2) the sale proceeds from the sale of Decedent's real estate by Caren Sachs, (3) Decedent's Discover credit card, (4) the Decedent's savings bonds, (5) and the source of funds that Caren Sachs used to repay the loan she owed to Decedent[;]"

WHEREAS, the accounting was filed in August 2023 (the "Accounting") and the Petitioner's response was filed on September 14, 2023 (the "Response");[3] in the Response, Lynne challenged (1) the purported support for Caren's repayment of the Loan, seeking judgment for the remaining $7,135.16, (2) the new purported receipts for cash withdrawals, seeking judgment for all the cash withdrawals from the PNC Account in the total amount of $151,278.80, and (3) the expenditures from the

---

[2] D.I. 140.

[3] D.I. 141, 144.

2

Discover Card, seeking judgment in the amount of $19,542.69;[4] in the Response, Lynne also reiterated her request for fee shifting;

WHEREAS, I presided over an evidentiary hearing on the Accounting and the Response on January 11, 2024 (the "Hearing");[5] before the Hearing, I granted Lynne's motion *in limine* precluding Caren's proffered fact witnesses and additional evidentiary record explaining that my accounting requirement "did not reopen the discovery record nor permit [Caren] an opportunity to belatedly and prejudicially (re)create the record that I found lacking at trial[;]"[6] the Hearing, nevertheless, went forward, whereat Caren testified in support of the Accounting and counsel to Lynne provided a proffer regarding Caren's exceptions to Lynne's accounting filed in the related Register of Wills proceeding (the "Estate Accounting");[7]

WHEREAS, in her exceptions to the Estate Accounting, Caren challenges Lynne's attorneys' fees and seeks reductions thereto, including a 35% reduction for efforts "not productive to any benefit of the estate" and removal of the motion to

---

[4] D.I. 144.

[5] *See* D.I. 146, 158. For purposes of this Order, I will not endeavor to summarize the testimony from Caren at the Hearing and direct interested readers to the transcript. D.I. 160. I witnessed that testimony, re-reviewed the transcript in preparing this Order, and reviewed the parties' post-hearing submissions; I have considered the entire record in making this decision, even if not directly mentioned herein.

[6] D.I. 157.

[7] *See* D.I. 133.

compel related expenses and mediation fee;[8] Lynne admits the motion to compel expenses were an inadvertent error and will be corrected, but disputes that any further reduction is warranted;

WHEREAS, at the conclusion of the Hearing, the parties agreed to submit post-hearing submissions, on a schedule later confirmed via stipulation and order;[9] post-hearing submissions were complete on April 30, 2024;[10]

WHEREAS, Caren bore "the burden of proving both the accuracy of [her] accounting and the propriety of the underlying transactions[;]"[11] for the Estate Accounting, Lynne bore the burden to prove her accounting was properly prepared;[12]

WHEREAS, although Delaware follows the American Rule, requiring each party to pay its own attorneys' fees, there are limited exceptions, including where "the losing party has acted in bad faith in opposing the relief being sought in the lawsuit. A subset of this 'bad faith' exception is that attorneys' fees may be awarded

---

[8] D.I. 165, p.3.

[9] *See* D.I. 159.

[10] *See* D.I. 164–65, 167, 169.

[11] *Dolby v. Key Box "5" Operatives, Inc.*, 1996 WL 741883, at *1 (Del. Ch. Dec. 17, 1996).

[12] *In re Rich*, 2013 WL 5966273, at *1 (Del. Ch. Oct. 29, 2013).

if it is shown that the defendant's conduct forced the plaintiff to file suit to 'secure a clearly defined and established right[;]'"[13]

IT IS HEREBY ORDERED this 30th day of August 2024, as follows:

1.  The Exceptions are SUSTAINED, Caren's exceptions to the Estate Accounting are STAYED, judgment should be entered against Caren in the amount of $180,750.36, plus pre- and post-judgment interest, and the AAL's fees shall be borne by the Estate, but attorneys' fees are shifted in Lynne's favor under the bad faith exception to the American Rule. Within 14 days, Lynne's counsel shall file an affidavit under Court of Chancery Rule 88, to which Caren may respond within 14 days of filing. Within 30 days of this Order, the parties shall submit a proposed implementing order addressing the judgment against Caren, leaving the shifted fee amount blank for my insertion and addressing the appropriate calculation of pre- and post-judgment interest.

2.  **The Exceptions.** Lynne asks this Court to enter judgment against Caren, payable first from her portion of the Estate, in the amount of $200,580.72, which includes (a) $151,278.80 of unexplained cash withdrawals, (b) $21,988.42 in attorneys' fees, (c) $7,135.16 for the balance of the Loan, (d) $4,984.72 regarding the Lincoln Financial annuity/IRA, and (e) $6,381.56 for an unaccounted for

---

[13] *McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000).

transaction made on the Discover Card.[14] Lynne further seeks pre- and post-judgment interest. I take these itemized challenges in turn.

a. **The cash withdrawals remain unsupported.** At trial, Caren admitted that she did not keep any record of the cash expenditures.[15] But she testified that the cash was used for the Decedent's care, an explanation she reiterated at the Hearing. This narrative explanation, alone, would be insufficient to meet Caren's burden to prove the cash was properly withdrawn and expended for the benefit of the Decedent. But, to some extent, it was not made in isolation. There is no dispute that the Decedent had aides or other care providers, and it is reasonable to infer that some of these funds went to such providers. But Caren did not offer any evidence regarding the standard or reasonable rates for the type of care provided to the Decedent, which, perhaps, I could use to reduce the judgment and craft a credit in Caren's favor.[16] Absent such showing and holding Caren to her burden of proof, I am compelled to enter judgment in the full amount withdrawn and unaccounted for.

---

[14] The full amount requested includes "$8,812.06 representing the balance of checks written from the Decedent's bank accounts that have no explanation[.]" D.I. 164, p.14. Lynne did not, however, include any discussion in the post-hearing submission in support of the check-related request, nor a listing of the checks at issue. Without such information, neither Caren, nor I, could address this request on its merits and therefore the request must be denied.

[15] She did, however, seek to introduce belatedly produced records in advance of the Hearing, which I rejected when I granted Lynne's motion *in limine. See* D.I. 157.

[16] *See Senior P'r, Inc. as Tr. of Ardythe Hope Child.'s Hosp. v. Lee*, 2022 WL 17246317,

b. **Caren must repay the attorneys' fees**. Caren admitted, and accounted for, payments to her attorneys from the Decedent's accounts in the amount of $21,988.42. At the Hearing, Caren testified that she used the Discover Card to pay for her legal fees "because my mother [the Decedent] had said that she would pay for the legal fees."[17] To the extent Caren is arguing the fees were pre-approved by the Decedent, I disagree and find the payment of attorneys' fees would have amounted to a self-dealing transaction, for which Caren has not demonstrated that the Decedent obtained independent advice from a competent, disinterested third party before consenting after full disclosure.[18] But setting that argument aside, this Court has recognized that agents operating under a Delaware power of attorney are entitled to reimbursement of expenses reasonably incurred on behalf of the principal, including attorneys' fees incurred in defense of a breach of fiduciary duty action.[19] Those fees are, however, "subject to disgorgement should the court find the agent breached their fiduciary duties."[20] Here, through the Report which was adopted as an order of this Court, Caren was found to have breached her fiduciary duties and

---

at *8 (Del. Ch. Nov. 28, 2022), *adopted* (Del. Ch. 2022) (accepting an estimate of care expenses to craft an equitable judgment despite a deficient accounting).

[17] D.I. 160, 30:7–8.

[18] *See* D.I. 135, p.27–28.

[19] *See, e.g.*, *Tikiob v. Tikiob-Carlson*, 2021 WL 4310513, at *7 (Del. Ch. Sept. 22, 2021).

[20] *Id.*

these fees should be disgorged through a judgment in the amount of $21,988.42 against Caren.

c.      **The balance of the Loan remains unpaid.** Caren contends the final amount of the Loan was repaid through the Burial Payment. In the Report, I held that the Burial Payment argument should not be credited.[21] Thus, Caren's continued reliance on this argument is barred, Lynne's objection to such testimony at the Hearing is sustained, and the testimony is stricken. Judgment should be entered against Caren for the remaining balance of $7,135.16.

d.      **No relief is warranted regarding the IRA distributions.** There is no dispute that the Decedent was entitled to distributions from the Lincoln Financial IRA, and a total of $4,984.72, distributed during Caren's service as agent for the Decedent, remains accounted for. But absent proof that Caren came into possession of these distributions, I struggle to find Caren responsible for the ongoing uncertainty, and decline to enter judgment against her.

e.      **The Discover Card transactions support a partial judgment.** Lynne has identified numerous items in the Discover Card statements for which she seeks a judgment against Caren. Those items total $6,381.56 and reflect charges made to restaurants, retailers, and service providers for which Caren failed to

---

[21] D.I. 135, p.37, n.170.

produce any supporting invoices or receipts. Rather, Caren relies solely on the Discover Card statements and her testimony that the charges were all for the benefit of the Decedent or made at the Decedent's insistence. I can largely credit her testimony, but I find the expenses related to the Vehicle should be included in the judgment for the reasons explained in the Report ($135.00 for the 2018 registration, $183.00 at the Delaware DMV, and $29.98 at Autozone).

3.      **Attorneys' Fees.** Lynne asks that the AAL's fees be borne solely by Caren and that Lynne's attorneys' fees be shifted to Caren, in an amount to be determined, for bad faith litigation. I address these in turn.

a.      **The AAL's fees were appropriately charged to the Estate.** I appointed the AAL following Chancellor Bouchard's lead in *In re Phyllis C. Carey*, C.A. No. 2017-0079-AGB. There, the Chancellor approved payment of the attorney *ad litems'* fees from the principal's trust, rather than from any party, individually. I suspect the decision was an easy one; the attorney *ad litem* reported that all parties were cooperative in his investigation, which was limited to the question of whether the principal was able to manage her property or business affairs. Here, the AAL's role was broader, the AAL found Caren "to generally be hostile and uncooperative,"[22] and the AAL uncovered concerns, and recommended further

---

[22] D.I. 53, p. 14.

action, regarding Caren's service as a fiduciary. Caren's hostility and lack of cooperation is disappointing, but it does not appear to have increased the AAL's fees or expenses to such an extent that shifting the AAL's fees to Caren, individually, would be equitable. The AAL served the Decedent admirably, providing a benefit to her, which was rightfully paid for by the Estate.

b.      **Caren engaged in bad faith litigation.** Under Section 49A-114(g) of the Durable Personal Powers of Attorney Act, Caren, as the Decedent's agent, was required to account to Lynne, the administrator of the Decedent's estate, and provide "receipts, disbursements, [and] transactions conducted on" the Decedent's behalf "within a reasonable period of time." Lynne filed her amended petition seeking such accounting on May 27, 2020; Caren did not provide an accounting until August 11, 2023, after heavily litigated proceedings and a court order directing her to account. It should not have taken all the time, effort, and expense of these contested proceedings for Caren to produce the statutorily mandated accounting. Caren, thus, engaged in bad faith litigation and Lynne's reasonable attorneys' fees incurred from July 27, 2020, the date of Caren's answer to the amended petition, through April 30, 2024, the last submission from Lynne on the Accounting, should be shifted.[23]

---

[23] In limiting the period for shifting, I am denying further shifting for the pre-amendment

4. **Interest.** Lynne requested that the judgment include pre- and post-judgment interest for specific amounts reflected in Lynne's post-hearing submission. Caren failed to respond to this request in her responsive submission, a knowing waiver, barring any further challenges.[24] Appropriate pre- and post-judgment interest shall be included in the parties' proposed implementing order.

5. **The Estate Accounting.** Caren challenged the attorneys' fees reflected on the Estate Accounting. Those fees included litigation-related fees that I am hereby shifting, in large part, to Caren. This shift may well moot the exceptions and, therefore, I am staying further consideration. The parties shall meet and confer on this issue and include their positions in the cover letter for the implementing order.

6. This is a final report under Court of Chancery Rule 143 and exceptions under Court of Chancery Rule 144 are stayed until the implementing order is issued.

IT IS SO ORDERED.

/s/ *Selena E. Molina*
Magistrate in Chancery

---

conduct, for which I have already shifted discovery-related fees, an appropriate sanction to address Caren's early deficiencies. *See* D.I. 42.

[24] *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").