**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 21, 2026
Date Decided: February 13, 2026

Joseph B. Cicero, Esq.
Dakota B. Eckenrode, Esq.
Chipman Brown Cicero & Cole, LLP
1313 N. Market St., Ste. 5400
Wilmington, DE 19801

David Wilks, Esq.
Matthew C. Conover, Esq.
Wilks Law, LLC
4250 Lancaster Pike, Ste. 200
Wilmington, DE 19805

RE:  *Anthony Faillace v. Outlander Gamma 5.2, LLC*,
     C.A. No. 2025-0582-DG (BWD)

Dear Counsel:

This letter resolves defendant Outlander Gamma 5.2, LLC's ("Outlander")

exceptions (the "Exceptions") to the Magistrate in Chancery's October 24, 2025

post-trial report (the "Report") in this books and records action.  Magistrate's Report

[hereinafter Report], Dkt. 43.

As detailed in the Report, Outlander is a Delaware limited liability company

and a special purpose investment vehicle formed to facilitate an investment in Cyan

Robotics, Inc.  *Id.* at 1.  Plaintiff Anthony Faillace ("Plaintiff") is a member of

Outlander and the managing partner of Drake Management, a "family office"

investment firm that manages money solely on behalf of Plaintiff.  *Id.* at 2.

In November 2021, Plaintiff invested $3 million in Outlander in exchange for membership units. *Id.* at 3. Plaintiff contends that in connection with his investment, Outlander represented that Plaintiff would receive "full ratchet anti-dilution protections." *Id.* According to Outlander, however, the "Subscription Agreement"[1] governing Plaintiff's investment does not include those rights. *Id.* at 6; OB at 4–5. Outlander denies that it made any such representations and argues that the Subscription Agreement's anti-reliance provision and the LLC Agreement's integration clause foreclose Plaintiff's position. OB at 4–5.

On November 28, 2023, Outlander distributed a capitalization table for the company that identified Plaintiff as owning 1,865,996 shares under a column labeled "Post-Outlander True Up FD." Report at 3. Plaintiff argues that this figure was consistent with his alleged anti-dilution rights. *Id.* But in December, Outlander asserted that the figures in the first capitalization table were inaccurate and circulated a revised table that identified Plaintiff as owning fewer shares. *Id.* at 4; Pl.'s Answering Br. in Opp'n to Def.'s Exceptions to the Magistrate's Final Report

---

[1] The Subscription Agreement incorporates the terms of the Outlander Gamma 5.2 LLC Agreement (the "LLC Agreement"). Opening Br. in Supp. of Its Exceptions to the Magistrate's Final Report [hereinafter OB] at 4, Dkt. 62. Together, "the Subscription Agreement and LLC Agreement contain all the rights, warranties, and obligations of [Outlander]'s investor-members and its manager, Outlander Management." *Id.*

[hereinafter AB] at 4, Dkt. 64. "How the incorrect cap table came to be is . . . not something that [Outlander is] able to further explain." Report at 6.

Plaintiff served a demand to inspect books and records (the "Demand") on Outlander's manager on August 27, 2024. *Id.* at 5. Plaintiff made the Demand for the stated purposes of valuation, investigating potential wrongdoing, and communicating with other members about Plaintiff's valuation and investigation of wrongdoing. *Id.* at 5–6.

Outlander responded to the Demand by producing all of the books and records Plaintiff sought, with one exception. *Id.* at 7. The Demand sought, among other books and records, "the current list of all members of Outlander Gamma 5.2, LLC and their last known business, home or mailing address[es]" (the "Member List"). *Id.* Outlander refused to produce the Member List, arguing that Plaintiff failed to state a proper purpose to investigate wrongdoing; the Member List was not necessary and essential for Plaintiff's valuation purpose; Plaintiff sought the Member List for improper purposes; and Outlander, as a venture capital fund, had a particularly strong interest in maintaining strict confidentiality of its Member List. *Id.* at 7–8.

On May 23, 2025, Plaintiff initiated this action through the filing of a Verified Complaint, seeking to compel inspection of the Member List. *Id.* at 9. The action was assigned to a Magistrate in Chancery, who held a one-day trial on a paper record

on September 16. *Id.* at 10. The Magistrate Judge issued her Report on October 24. In the Report, the Magistrate in Chancery concluded that the Demand stated two independent proper purposes supporting inspection—communicating with other members and investigating possible wrongdoing.[2] *See id.* at 14–15; *id.* at 16–18. The Report further concluded that the Member List is necessary and essential to Plaintiff's proper purposes and rejected Outlander's arguments against producing the Member List—including that Plaintiff's stated purposes are pretextual and that Title 6, Section 18-305(c) permits Outlander's manager to withhold the Member list. *Id.* at 18–35. Finally, the Report found that Outlander's conduct in opposing the Demand supported fee-shifting. *Id.* at 36–40.

Outlander filed Exceptions to the Report on December 9, 2025. Dkt. 56. Briefing on the Exceptions concluded on January 21, 2026.[3] Oral argument is unnecessary. I have reviewed the trial record and the Magistrate in Chancery's

---

[2] Outlander did not challenge Plaintiff's valuation purpose. *See* Report at 14 n.61 (noting that Outlander produced financial books and records to satisfy Plaintiff's valuation purpose).

[3] On January 9, Outlander filed its opening brief in support of the Exceptions. OB, Dkt. 62. On January 16, Plaintiff filed his answering brief in opposition to the Exceptions. AB, Dkt. 64. On January 21, Outlander filed its reply brief in further support of the Exceptions. Def.'s Reply Br. in Supp. of Its Exceptions to the Magistrate's Final Report [hereinafter RB], Dkt. 66.

determinations *de novo*. *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

Good cause does not exist to expand the record. *See* Ct. Ch. R. 144(e).

Outlander raises three arguments on Exceptions. First, Outlander takes exception to the Magistrate Judge's conclusion that the Demand stated a credible basis to suspect wrongdoing. OB at 14–23. As Plaintiff points out, however, Plaintiff established another, independent purpose to inspect the Member List— communicating with members about valuation—to which Outlander does not take exception. AB at 2. Outlander's reply appears to withdraw this aspect of the Exceptions, and I do not address it further. *See generally* RB (failing to respond to arguments concerning Plaintiff's investigatory purpose).[4]

Second, Outlander takes exception to the Report's determination that the Member List is not a trade secret under Section 18-305(c), which permits the manager of a limited liability company "to keep confidential from the members, for such period of time as the manager deems reasonable, any information which the manager reasonably believes to be in the nature of trade secrets." 6 *Del. C.* § 18-

---

[4] RB at 1 (pivoting from this argument and asserting instead that "while [Outlander] alleges that '[t]he Company's failure to lodge an exception to each purpose that the Report deemed proper ends the inquiry[,]' this wholly neglects [Outlander]'s second exception, which argues that even if Plaintiff's purposes are deemed proper, the [Member] List qualifies as a trade secret protected from disclosure under 6 *Del. C.* § 18-305(c)").

305(c); OB at 24–27.  The Report, relying on past precedent, rejected Outlander's position "that the [M]ember [L]ist is an 'Investor List,' which is 'like a customer list' and 'qualifies as a trade secret.'"  Report at 32 (citing *Marilyn Abrams Living Tr. v. Pope Invs. LLC*, 2017 WL 1064647, at *6 (Del. Ch. Mar. 21, 2017), and *Garlington v. Two Rivers Farm, LLC*, 2025 WL 1077316, at *5 (Del. Ch. Apr. 7, 2025), *aff'd*, 2025 WL 3551943 (Del. 2025) (TABLE)).  Outlander asserts that the Report "overstates the applicability" of this authority and "discounts the unique emphasis on investor privacy in the venture capital context."  OB at 24.  "Believing the [Magistrate Judge] to have dealt with the issues . . . in a proper manner, and having articulated the reasons for her decision well, there is no need for me to repeat her analysis."  *Blackburn v. Hooks*, 2018 WL 4643812, at *2 (Del. Ch. Sep. 26, 2018) (quoting *In re Erdman*, 2011 WL 2191680, at *1 (Del. Ch. May 26, 2011)).  I add only that, to the extent Outlander contends there is a "heightened need for secrecy in venture capital" compared to private equity, OB at 27, Outlander's arguments hold little persuasive value here, where Plaintiff invests capital for only one person, does not compete for investors, and has agreed to a confidentiality order.[5]  *See* AB at 29.

---

[5] *See* OB at 26 ("[A] venture capital fund's investor list is a curated, high-value set of capital providers, and disclosure can provide competitors with a free and targeted roadmap

Finally, Outlander takes exception to the Magistrate Judge's recommendation on fee-shifting. OB at 27–30. "Delaware courts follow the American Rule that 'each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation.'" *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at \*29 (Del. Ch. Nov. 24, 2020) (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)). An exception exists in equity, however, when a party litigates in bad faith. *Rice v. Herrigan-Ferro*, 2004 WL 1587563, at \*1 (Del. Ch. July 12, 2004). This Court has recognized that in "extraordinary circumstances," "overly aggressive litigation strategies" employed to improperly resist a books and records demand may warrant fee-shifting. *Pettry*, 2020 WL 6870461, at \*29–30 (citation omitted). A party seeking to shift fees must satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad faith." *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at \*5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)). To warrant fees, a litigant's conduct must be "glaring[ly] egregious." *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at \*6 (Del. Ch. July 7, 2023).

---

of whom to solicit for their own funds' growth."); RB at 16 (arguing that disclosure of the Member List "would pose a substantial risk of competitive harm to the Company because it would allow a competitor to target, interfere with, or replicate those relationships").

On *de novo* review, I do not believe Plaintiff has met the high bar to demonstrate clear evidence of bad faith warranting fee-shifting. When faced with the Demand, Outlander voluntarily produced all the books and records Plaintiff sought except for the Member List. *See* Report at 7. In the litigation, Outlander did not require Plaintiff to sit for a deposition or engage in any material document production, thereby avoiding motion practice in discovery, agreed to a trial on a paper record, and made at least one proposal to resolve the dispute before trial. OB at 29; Report at 10 n.45. To my mind, those facts undercut a finding of bad faith.[6]

---

[6] By contrast, the Court has shifted fees in books and records proceedings in which the defendants engaged in a pattern of abusing the litigation process. *See, e.g.*, *PVH Polymath Venture Hldgs. Ltd. v. TAG Fintech, Inc.*, 2024 WL 371084, at *9 (Del. Ch. Jan. 31, 2024) (shifting fees where the defendant "[s]ought to needlessly complicate and delay the proceedings, including by (1) producing an expert opinion attempting to inject new issues under Cyprus law after the discovery deadline; (2) purporting to unilaterally cancel Plaintiff's shares on the eve of the pre-trial conference and seeking to postpone trial on that basis; (3) insisting on the presentation of live testimony at trial when, under the circumstances, the disputed issues could easily have been resolved on the papers; (4) refusing to stipulate to the authenticity of most documents at trial; and (5) requiring Plaintiff to inspect the Company's books and records in person in Abu Dhabi" (footnotes omitted)); *Myers v. Acad. Sec., Inc.*, 2023 WL 6380449, at *2 (Del. Ch. Oct. 2, 2023) (ORDER) (granting partial fee award where the defendant "forced the parties to litigate [a] baseless standing defense through trial" and "raised other baseless factual assertions and legal red herrings"), *R. & R. adopted*, 2023 WL 6846984 (Del. Ch. Oct. 16, 2023); *Seidman*, 2023 WL 4503948, at *6–8 (shifting fees where the defendant "took a series of litigation positions that, when viewed collectively, were glaringly egregious," including taking "aggressive positions in discovery" and making "demonstrably false statements" in briefing); *Pettry*, 2020 WL 6870461, at *30 (shifting fees where the defendant "block[ed] legitimate discovery, misrepresent[ed] the record, and t[ook] positions for no apparent purpose other than obstructing the exercise of Plaintiffs' statutory rights").

Plaintiff also has not shown that Outlander acted in bad faith by improperly withholding records to which Plaintiff had "a clearly defined and established right[.]" *Pettry v. Gilead Scis., Inc.*, 2021 WL 3087027, at *1 (Del. Ch. July 22, 2021) (quoting *McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000)). Outlander's arguments were unsuccessful, but in my view, they were not frivolous.[7] "[W]inning on the merits does not automatically entitle a Section 220 plaintiff to fees; again, fee shifting is appropriate in the rare event that a party has litigated vexatiously or otherwise acted in subjective bad faith." *Hashemi v. All.Health, Inc.*, 2024 WL 1500659, at *3 (Del. Ch. Apr. 8, 2024); *see also Gen. Video Corp. v. Kertesz*, 2009 WL 106509, at *1 (Del. Ch. Jan. 13, 2009) (noting "the simple fact that" a party's positions "were disproven at trial is not itself clear evidence of bad faith"). Because Plaintiff's litigation positions do not reflect an "abuse of process that is manifestly incompatible with justice" or "an attempt to game the system" in bad faith,[8] this aspect of the Exceptions is sustained.

---

[7] The Magistrate Judge concluded that some of Outlander's arguments—including its citation to a case that was overruled and its attempt to distinguish its credible basis arguments from the kind of merits-based, "actionability" arguments precluded under *AmerisourceBergen Corp. v. Lebanon Cty. Empls.' Ret. Fund*, 243 A.3d 417 (Del. 2020)— were "baseless" and constituted glaringly egregious conduct. Report at 36–39.

[8] *Donnelly v. Keryx Biopharmaceuticals, Inc.*, 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019).

For the reasons explained above, the Exceptions are largely overruled, and the

Report is adopted with modifications on fee-shifting only.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor


cc:     All counsel of record (by File & ServeXpress)