**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 24, 2026

Robert L. Burns
Nicole M. Henry
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Richard I.G. Jones, Jr.
Periann Doko
Harry W. Shenton IV
Berger McDermott LLP
1105 North Market Street,
11th Floor
Wilmington, Delaware 19801

Re: *Christian Schank, et al. v. Ariz. Isotopes Sci. Rsch. Corp.*,
C.A. No. 2025-0208-SEM

Dear Counsel:

This letter decision resolves the parties' exceptions to Senior Magistrate Molina's (ret.) final post-trial report (the "Final Report").[1]

Plaintiffs Deanna Matthews, Cameron Schank, and Christian Schank (collectively, "Plaintiffs")[2] are stockholders of Defendant Arizona Isotopes Science Research Corporation (the "Company" or "Defendant"). Plaintiffs filed this action to enforce their demand to inspect Company records under Section 220 of the DGCL. In the Final Report, the Senior Magistrate ordered the Company to produce more documents and shifted costs to Defendant on the ground that Plaintiffs were the prevailing parties. But the Senior Magistrate declined each side's request to shift

---

[1] *See Schank v. Ariz. Isotopes Sci. Rsch. Corp.*, 2025 WL 3046874 (Del. Ch. Oct. 30, 2025) (the "Final Report").

[2] For the sake of clarity, this opinion refers to certain individuals by their first name alone. No familiarity or disrespect is intended.

fees based on bad-faith litigation conduct. Plaintiffs filed exceptions to the Final Report's failure to shift fees. Defendant filed exceptions to the Final Report's designation of Plaintiffs as the prevailing parties.

The court reviews this matter de novo.[3] In doing so, the court adopts former Senior Magistrate Molina's[4] clear and thorough statement of the factual background.[5] An abbreviated re-telling of events follows.

The Company is in the crosshairs of two factions that have been feuding for years. One faction aligns with the Company's President and CEO Gregory "Wade" Brooksby.[6] It includes Wade's father Brandt Brooksby, who serves as Chairman of its board of directors,[7] and Wade's mother-in-law Saundra Parker, who is one of the

---

[3] Ct. Ch. R. 144(b)(2); *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999); *Operating Eng'rs Constr. & Miscellaneous Pension Fund v. Pioneer Nat. Res. Co.*, 2025 WL 2106580, at *1 (Del. Ch. July 28, 2025).

[4] Senior Magistrate Molina retired from the bench on March 10, 2026. She joined the court in January 2019 as a Magistrate in Chancery and was later named Senior Magistrate in January 2025. The court is grateful for her tireless efforts, extensive expertise, and unwavering dedication to the Court of Chancery and the people we serve.

[5] This decision cites to: C.A. No. 2025-0208-SEM docket entries (by docket "Dkt." number); trial exhibits (by "JX-" number); the trial transcript, Dkts. 61, 65 ("Trial Tr."); and stipulated facts set forth in the Parties' Stipulation and Pre-Trial Order, Dkt. 47 ("PTO").

[6] Trial Tr. at 127:10–12 (G. Brooksby).

[7] Trial Tr. at 235:6–14 (B. Brooksby).

Company's largest stockholders.[8]  Saundra held Company shares with her late husband, George.[9]

Plaintiffs comprise the other faction.  They are all relatives of Clyde Jupiter, a "world renowned scientist on nuclear safety"[10] who led the Company's scientific research from its founding until his death in 2024.[11]  Christian Schank is Clyde's stepson, Cameron Schank is Christian's son, and Deanna Matthews is Christian's sister.  Plaintiffs own more than 5% of the Company's outstanding stock.

The factions were close once.  But after Clyde died, their relationships became strained.  Before this litigation, various members of the factions were immersed in disputes over who should serve as Clyde's widow's guardian and the probate of Clyde's estate.  Those battles spilled over into commercial disputes over promissory notes held by the Jupiters, control over the Parkers' shares of the Company, and, ultimately, this litigation.

The Company remains in business, but it has not held an annual stockholder meeting since 2019.  The Company updated stockholders generally on its business and operations quarterly from 2020 through 2023.  In 2024, it began providing

---

[8] JX-3; JX-4.

[9] JX-3.

[10] Trial Tr. at 240:14–15 (B. Brooksby).

[11] Trial Tr. at 282:4–7 (B. Brooksby); JX-412 at 46.

updates every six months. Christian described the quarterly updates as overly generalized and providing "no real financial or other information."[12]

Christian served demands to inspect Company books and records, acting as power of attorney for the other Plaintiffs. He sent the operative demand (the "Demand") on February 12, 2025.[13]

The Demand stated that Plaintiffs' purpose was to communicate with other stockholders, value Plaintiffs' interests in the Company, and investigate potential wrongdoing.[14] The Demand sought 14 categories of documents. That included the Company's stock ledger, documents reflecting the identities of the Company's board members since the beginning of 2019, the Company's most recent audited financial statements, board minutes, written consents of the board, and copies of all corporate charters and bylaws.[15]

The Company agreed to provide some of the requested documents.[16] It agreed to provide stockholder names and email addresses, publicly available names and addresses of board members, the most recent balance sheet and profit and loss statement for 2024, the then-current bylaws, and any other "purely factual

---

[12] Trial Tr. at 22:19–20 (Christian Schank).

[13] JX-111. Plaintiffs each served a prior demand in November 2024. Christian sent all four of the prior demands, acting as power of attorney for Cameron and Deanna. The parties treat the February 2025 demand as the operative demand.

[14] *Id.* at 5–7.

[15] *Id.* at 8–9.

[16] JX-122 at 3.

documents" that satisfy the requests.[17]   The Company conditioned inspection on confidentiality protections and proposed a form of confidentiality agreement to Plaintiffs.[18]   The confidentiality agreement included a threat by the Company to report Christian to the State Bar of California, where he holds a law license, if he breached the agreement.[19]

Plaintiffs filed this action on February 24, 2025 to compel inspection of the additional documents requested in the Demand.[20]   During the litigation, the parties executed a confidentiality agreement on  April 21, 2025,[21] and the Company made six voluntary productions starting on that date.[22]   The productions totaled 510 pages across 117 distinct documents.[23]  The Senior Magistrate held trial on June 3 and June 17, 2025.[24]   The parties completed post-trial briefing on July 14, 2025.[25]   Each side requested fee-shifting for bad-faith litigation conduct.[26]

The Senior Magistrate issued the Final Report on October 30, 2025.[27]

---

[17] *Id.* at 4–6.

[18] JX-128.

[19] *Id.* at 2.

[20] Dkt. 1 (Compl.) ¶¶ 1, 56.

[21] JX-209.

[22] PTO ¶ 86.

[23] *Id*.

[24] Dkt. 58; Dkt. 62.

[25] Dkt. 66 ("Def.'s Post-Trial Br."); Dkt. 67 ("Pls.' Post-Trial Br.").

[26] Def.'s Post-Trial Br. at 2; Pls.' Post-Trial Br. at 8.

[27] *See* Final Report.

In the Final Report, the Senior Magistrate found that all three purposes for the Demand were proper.[28]  For this purpose, she found that Plaintiffs established a credible basis for investigating wrongdoing based on the Company's questionable financial records and failure to hold an annual meeting in five years.[29]  The Senior Magistrate also cited the cancellation of Cameron's shares in response to a demand as evidence of potential wrongdoing.[30]

The Final Report recommended a limited scope of inspection because Plaintiffs failed to demonstrate that more documents were necessary.[31]  The Final Report recommended production of "back up" stock certificates and stock ledgers, additional financial statements including the 2023 valuation, board-level materials, and copies of executive and management compensation records.[32]

The Final Report recommended shifting costs but not fees.  Neither side had met the high bar of establishing bad faith.[33]

Plaintiffs and the Company filed exceptions to the Final Report.[34]  Briefing concluded on February 3, 2026.[35]  The court did not hold oral argument.

---

[28] *Id.* at *11.

[29] *Id.* at *10.

[30] *Id.*

[31] *Id.* at *9.

[32] *Id.*

[33] *Id.* at *13.

[34] Dkt. 75 (Def.'s Notice of Exceptions); Dkt. 76 (Pls.' Notice of Exceptions).

[35] Dkt. 94.

The parties' exceptions raise two issues. First, did the Senior Magistrate err in recommending that the court designate Plaintiffs as the prevailing parties? Second, should the Senior Magistrate have recommended awarding Plaintiffs attorneys' fees based on the Company's bad-faith litigation conduct?

The Senior Magistrate got the first issue right—Plaintiffs are the prevailing parties. The Company refused to produce a single document before Plaintiffs filed the litigation and dropped most of its defenses by trial. Plaintiffs also proved that their purposes were proper. And the Senior Magistrate ordered additional limited production.

The Senior Magistrate got the second issue right as well—fee-shifting is not warranted here. Plaintiffs argue that Defendant refused to permit inspection although they had clearly established rights to the books and records. Also, the Company's conduct complicated and prolonged the litigation. For example, the Company denied Cameron's inspection demand after cancelling Cameron's shares, only to reverse course and reinstate them.[36] According to Plaintiffs, the Company also made over a dozen misrepresentations that include statements about the existence of annual meetings, board minutes, and the fact that all stockholders had to sign private placement memos.[37] Plaintiffs also argue that the Company improperly refused to engage in discussions on redactions or respond to Plaintiffs'

---

[36] JX-65; JX-67; JX-68; Trial Tr. at 178:16–18 (G. Brooksby); PTO ¶ 49.

[37] Dkt. 81 (Pls.' Opening Br.) at 5, 23–24; JX-58 at 6; Final Report at *5.

request for a certificate of completeness, which the Senior Magistrate ultimately ordered.[38] Finally, Plaintiffs note that the Company threatened to report Christian to the California Bar if he breached the confidentiality agreement.[39]

This conduct is troubling. But it does not amount to bad-faith litigation conduct warranting fee-shifting. Fee-shifting is warranted when the party's conduct "was so egregious as to justify an award of attorneys' fees as an element of damages."[40] "The Court typically will not find a litigant acted in bad faith for purposes of shifting attorneys' fees unless the litigant's conduct rose to the level of glaring egregiousness."[41] The party who is asking for fee-shifting must point to "clear evidence" of bad faith.[42] "Allegations of bad faith, unfortunately, are not rare birds in this Court; in fact, they are becoming the starlings of misplaced motion practice."[43] The evidence of bad faith is too weak to justify fee-shifting.

Both Plaintiffs' and the Company's exceptions are overruled. I adopt the Senior Magistrate's recommendations in the Final Report.

IT IS SO ORDERED.

---

[38] Final Report at *12–13.

[39] JX-128 at 2.

[40] *eBay Domestic Hldgs., Inc. v. Newmark,* 16 A.3d 1, 47 (Del. Ch. 2010) (quoting *Reagan v. Randell*, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002)).

[41] *Id.* (cleaned up).

[42] *Donnelly v. Keryx Biopharmaceuticals, Inc.*, 2019 WL 5446015, at *6 (Del. Ch. Oct. 24, 2019) (quoting *McGowan v. Empress Entm't, Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000)).

[43] *Id.*

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)